NYBURG *v.* SOLMSON ET AL.

[No. 171, October Term, 1953.]

152

*Decided June 25, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Lawrence I. Weisman,* on the brief, for appellant.

*Donald N. Rothman,* with whom were *Gordon and Feinblatt,* on the brief, for appellee, Sydney Solmson.

HAMMOND, J., delivered the opinion of the Court.

This appeal will end the current battle in a war of neighbors which has been raging intermittently since a garage was built and began operation in 1920 in a residential neighborhood of Baltimore. The present engagement, if not an Appomattox, may well turn out to be a Gettysburg.

The father of the individual appellee, who will be referred to as the appellee, built the one story brick garage, known as 2413-23 Linden Ave., 102 feet wide by 240 feet deep, in which were stored, serviced and repaired cars of nearby residents. Between the front of the garage and Linden Avenue is, as there has been always, an open area some 164 feet by 129 feet. In 1931, when the Baltimore City Zoning Ordinance became effective, the neighborhood was classified as a residential use district and the garage operations continued without change. At the time the garage was built, there were protests from the neighbors which were pacified by the assurance that the open area, except that portion of it which comprised a paved u-shaped driveway from the garage to Linden Avenue, would be kept in grass, flowers

154

and shrubs. For a while, this was done but it became impractical because cars ran over it and parked in the open space. On one occasion, a call station and parking space for taxicabs was provided by the garage owner and the neighbors objected. Later, the owners endeavored to convert the garage into a distribution center for department store deliveries; this brought about renewed neighborhood protestation, and the desired use was turned down by the Board of Municipal and Zoning Appeals. No appeal was taken.

In 1950, the appellee made a contract with Nash-Kelvinator Co. to use the open space in front of the garage for the storage of new cars, preliminary to distribution to local Nash dealers. This use continued for some two years without objection, but in January, 1953, the appellant, who lives diagonally across the street from the garage, complained to the Bureau of Building Inspection that the open space was being used, in violation of the law, for the storage of up to fifty new motor vehicles. The appellee was notified of the complaint and, seeking to establish on the record that there existed a non-conforming use as to the whole lot of ground owned by him, applied for a permit to continue the use of the open space for the parking, storage and washing of motor vehicles, and for the sale of gasoline and accessories. We have held recently that this was a procedure justified by the Zoning Ordinance of Baltimore. *Bensel v. City of Baltimore*, 203 Md. 506, 101 A. 2d 826. The application was denied, and an appeal was taken to the Board of Municipal and Zoning Appeals. After a hearing at which the appellant was in the van against recognition and continuation of the non-conforming use, the Board, on February 24, 1953, held that the appellee had a non-conforming use for the sale of gasoline and accessories and for the parking and storage of vehicles, but restricted the use of the open area in front of the garage to the extent of the use in 1931, and held that not more than ten vehicles could be stored at any one time upon the lot.

The appellee, in due time, petitioned the Baltimore City Court to entertain an appeal from so much of the decision of the Board as limited the use to not more than ten vehicles. The court ordered the appeal to be entered and the record sent up. After the time allowed for the taking of an appeal from the Board to Court, the appellant filed an appeal from the Board's order of February 24 in the Baltimore City Court. Subsequently, this appeal was dismissed by that court because it was filed too late, and no appeal was taken to this Court.

Some six weeks after the time for an appeal had passed, the appellant filed a petition in the Baltimore City Court in the appeal which had been taken by the appellee, which sought leave to intervene, and file an answer. On the same day, the court ordered the intervention and, thereupon, the appellant filed an answer in which he alleged that any use of the garage premises, other than residential use, violated the Zoning Ordinance, that no non-conforming use existed as to the open space in front of the building, that if such use ever existed, it had been abandoned, that the 1947 effort of the appellee to use the garage as a distribution center was *res judicata* as to the non-existence of the non-conforming use of the open space, and finally, that even if there existed a non-conforming use of the open space, its present use: ". . . as an interstate trucking depot for new automobiles . . ." is offensive because of the odor, dust, gasoline fumes, vibration and noise which result. The prayer of the answer was that the court would eliminate entirely: ". . . a non-conforming use of the Petitioner, in said open space." The appellee, several days later, filed a petition to strike the order making the appellant a party defendant, on the ground that the latter had filed an untimely appeal from the order of the Board of February 24, which he now sought to attack as an intervenor. The trial court reserved decision on the right of the appellant to intervene until a hearing on the merits. After such hearing, the court passed its order, holding: (1) that the action of the

Board in finding that there existed a non-conforming use for parking, storing and the repair of motor vehicles in the garage building and for the use of the entire open space in front of the said building for the sale of gasoline, oil and accessories and for parking and storing of motor vehicles is supported by substantial evidence; (2) that the action of the Board which sought to restrict the use of the open space: ". . . to that use which existed in 1931, namely, storage of not more than ten cars or trucks . . ." is improper as a matter of law, since it amounted to an attempted prohibition of a legally valid intensification of use; (3) that the appellant, Sidney Nyburg, was not entitled, under the facts of the case, to intervene as a defendant, having taken a late appeal from the decision of the Board of which he now complains.

In the briefs and argument here, the parties collide first, and head on, as to whether the court below was right in refusing the appellant leave to intervene as a defendant. The appellant says that the refusal of intervention and refusal to rule on the issue raised by him constituted reversible error. The appellee counters that if one is dissatisfied or aggrieved by the decision of the Zoning Board, he must appeal in due time and may not, by intervention, after the time for appeal has passed, seek to secure affirmative relief. The appellee says further that if appellant be permitted to intervene, he must seek only to uphold the decisions of the Board. Generally, the right to intervene is within the discretion of the trial court, measured in the light of the intervenor's interest in the subject matter and the issues raised by the proceedings. The exercise of discretion as to the right of intervention, generally is not subject to appeal; it may be if the action of the court amounts to an abuse of discretion: *Conroy v. Southern Maryland Agricultural Assoc.,* 165 Md. 494; *Stirn v. Radio-Keith-Orpheum Corp.,* 163 Md. 398; *Miller's Equity Procedure,* Sec. 77-81; and *Bauer v. Hamill,* 188 Md. 553. The general test has been applied in zoning cases. In several,

this Court has not questioned the action of the lower court in permitting intervention of a neighbor taxpayer, as a party defendant, seeking to uphold the decision of the Board. See *Fritze v. City of Baltimore,* 202 Md. 265; *Bever v. City of Baltimore,* 182 Md. 444; *City of Baltimore v. Cohn,* 204 Md. 523. On the other hand, we have approved the action of the lower court in refusing intervention. In *Psalmist Baptist Church, et al. v. Board of Zoning Appeals,* 175 Md. 7, the appellants, a month after the Baltimore City Court decided a zoning case, filed a petition in that court to reopen the case on the allegation that they had new and additional facts which should be brought to the court's attention. Their petition was dismissed by the lower court and their appeal to this Court from that action was also dismissed. In *City of Baltimore v. Shapiro,* 187 Md. 623, we accepted without question the action of the lower court in refusing permission to protestants to intervene for purposes of appeal to this Court after the decision of the lower court. In *Windsor Hills Improvement Assoc. v. City of Baltimore,* 195 Md. 383, an association appealed to the Baltimore City Court from the decision of the Board, and two months after the time for appeal had expired, one Kairys, a taxpayer and president of the association, was granted leave to intervene as a party plaintiff. The court below dismissed the appeal of the association on the ground that it was not a person nor a taxpayer who was aggrieved or interested. Judge Markell, in speaking of the lower court's permission to Kairys to intervene, said for the Court: "On the record Kairys is a taxpayer and a party in the lower court and therefore entitled to an appeal to this court. We think, however, that his petition for intervention after expiration of the time for appeal could not validate the Association's attempt to appeal and should have been denied." In the case before us, it is clear that the appellant, who had vigorously participated in the hearing before the Board, was entitled to appeal under the provisions of the Enabling Act and the Zoning Ordinance, both as

158

a person "aggrieved" by a decision of the Board, and as a "taxpayer". He could have made direct attack on the Board's decision and order and, in fact, did so, but by a late appeal. It was only after it was apparent that the appeal was to be dismissed, that the appellant sought by intervention to obtain the relief which he had sought by appeal but lost by his failure to act in time. The court below permitted him to intervene on his *ex parte* application and to participate in the case, ruling only after the case had been fully heard and as part of the final order, that he was not entitled to intervene. Essentially then, the action of the lower court was to forbid the intervention of the appellant for the purposes of appeal to this Court. In both procedure and substance, the case is not unlike *Conroy v. Southern Maryland Agricultural Assoc., supra,* and the procedure condemned in *Windsor Hills Improvement Assoc. v. City of Baltimore, supra.* We think that the action of the lower court was fully justified under the circumstances of the case and well within the exercise of its sound discretion.

This finding would ordinarily lead to a dismissal of the appeal, since the Mayor and City Council acquiesced in the decision of the lower court and the elimination of Sidney Nyburg would leave no one with standing as an appellant. If the appeal were dismissed, the order of the lower court would, of course, stand and under it, the appellee would have a non-conforming use in the open space without any restrictions as to the number of cars which were to be parked or stored thereon. We feel, however, as the case comes to us, that it would be appropriate to reach the same result by affirmance of the order appealed from. This is because the case was fully argued on the merits in the court below and the appellant was not excluded until and as part of the final decision. The merits were fully briefed and argued by both sides in this Court and they joined in asking that we pass on the merits.

We agree with the holding of the lower court that there was ample evidence before the Board to justify

a finding that the appellee had a non-conforming use as to the whole lot owned by him on Linden Avenue, including the open space in front of the garage. The protestants themselves admit that cars were parked and stored on part of the open area, although they say that they were few in number and that the occurence was infrequent. The appellee, and witnesses who supported him, gave testimony which fully warranted a finding that all of the area from 1925 on, at least, had been used for the parking, storing, washing and simonizing of cars and that part had been used for the sale of gasoline from pumps. One witness said that he and thirty or forty other chauffeurs regularly parked their own and their employers' cars on the open area and that this had been going on for thirty years. The witness referred to occasions when he had gone to Florida and left his car on the lot for weeks and said that others had done the same thing. There was testimony that when the garage was full, persons desiring to park their cars, would be given claim checks and the cars left on the lot until they could be put into the garage. The evidence fully supports a finding that the use was continuous, substantial and commercial. The use meets the test adopted in *Chayt v. Board of Zoning Appeals*, 177 Md. 426, 434, of an existing use; that is to say, the utilization of the premises so that they are known in the neighborhood as being employed for the conduct of a given business. The appellant seeks to show that in the 1947 proceedings before the Board of Municipal and Zoning Appeals, the appellee did not make the same claim as to the use of the open space that he now makes. It is clear from the record of those proceedings that the emphasis then was on the change to be made in the use of the building, the open space not being involved, but that the appellee gave brief testimony as to the use of the open space which did not vary significantly from his 1953 testimony. Abandonment of the use at the time the garage was leased for four years is claimed but not seriously relied on by

the appellant, and the evidence does not support the claim.

The appellant seeks to show that the use of the property for the unloading and distribution of Nash cars constitutes a nuisance which is offensive because of noise, dust and fumes. There was testimony from a number of neighbors that this claim was either greatly exaggerated or inaccurate. The appellant carries his contention as to this as far as to say that the use of the open space should be classified as second commercial because it is used for a trade, industry or use: ". . . that is noxious or offensive by reason of the emission of odor, dust, smoke, gas, fumes, vibration or noise." under the provisions of Section 8 (d) 20 of the Baltimore City Zoning Ordinance, and so constitutes a forbidden second commercial use. Neither the Board nor the court, on appeal, felt that the claim was justified on the evidence. As a matter of law, a garage, a new car sales room and a truck distribution terminal are all permissible uses in a first commercial use district. See *City of Baltimore v. Cohn, supra.* A non-conforming use may be changed to a use of the same or a higher classification. Thus, if the appellee had a non-conforming first commercial use of the open space in front of the garage, as we hold that he did, the property could have been used for the sale of new cars or as a truck distribution center. See *Roach v. Board of Zoning Appeals,* 175 Md. 1. The noise, dust and fumes normal to the conduct of any such businesses certainly would not be within the ban of Section 8 (d) 20 of the Ordinance. The fact that the first commercial use is a non-conforming one in a residential district, does not compel a test under the ordinance more severe than that which would be applied if the industry, trade or use were being carried on in a first commercial district. If any of the activities of the appellee violate the laws of the State or of the City, because of the time at which, or the manner in which, they are carried out, the appellant and the other

neighbors have the remedies provided for the violations of such laws.

We come then to the claim most seriously relied on by the appellant—that the Board was justified in restricting the use of the open space to the parking and storage of not more than ten cars at one time because the present use of the open space constitutes a prohibited change of use, or as the Board put it, that the use of this lot for parking and storage has increased, beginning in 1950, and: ". . . has changed from parking of cars to practically a new car agency. . ." As we have pointed out, a new car agency is a permissible first commercial use and the appellee, having the right to park and store motor vehicles on the open space, would have the right to use it as a new car agency. The appellant's contention really is that the appellee's use of the property amounts to an extension of a non-conforming first commercial use, and that the Board was justified in refusing such extension on the strength of cases such as *Colati v. Jirout,* 186 Md. 652; *Cloland v. City of Baltimore,* 198 Md. 440; and *Fritze v. City of Baltimore, supra.* We think that the case before us plainly is different from those cases in that here there is not an extension but merely an intensification of a long continued non-conforming use. In *Green v. Garrett,* 192 Md. 52, there was a suit to enjoin the Department of Recreation and Parks and a professional baseball club from entering into an agreement for the use of the Baltimore stadium for the playing of professional baseball at night. Before the Zoning Ordinance was passed in 1931, the stadium had been built and used for professional football games and at least one baseball game. This Court held that it constituted a non-conforming use. It distinguished *Colati v. Jirout, supra,* and said that it has never been held that: ". . . more frequent use of a property for a purpose which does not conform to the ordinary restrictions of the neighborhood is an extension of an infrequent use of the same building for a similar purpose. We do not think such contention is

162

tenable." It was held that although there was no doubt that the games played at the stadium had produced a use greatly in excess of the former use, that intensification was not an extension within the meaning of the Zoning Ordinance.

We think that the present case is controlled by the principle of the *Green* case and that the court below was right in striking down the restriction which the Board had placed on the use of the open space in front of the garage, and in affirming otherwise the findings of the Board.

*Order affirmed, with costs.*