SHANNAHAN ET UX. *v.* RINGGOLD ET AL.

SAME *v.* COUNTY COMMISSIONERS OF TALBOT COUNTY ET AL.

[No. 123, October Term, 1956.]

(Two Appeals In One Record)

*Decided March 8, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*William H. Adkins, II,* with whom was *T. Hughlett Henry, Jr.,* on the brief, for appellants.

· *Oliver S. Mullikin,* with whom were *John C. North, II,* and *John C. North,* on the brief, for Emily L. Ringgold et al.,

appellees, and *Zebulon H. Stafford,* for County Commissioners of Talbot County et al., appellees.

HENDERSON, J., delivered the opinion of the Court.

These two appeals in a zoning case from Talbot County are from a decree of the equity court passed on June 20, 1956, directing the appellants to "immediately dismantle and remove from their property known as "The Home Place' the half completed warehouse structure located thereon * * * ." One suit was instituted on February 28, 1956, by a group of neighboring property owners, alleging special damages by reason of the conduct by the appellants of a commercial well drilling business upon their properties known as "The Home Place" and "Tide Mill Cove" in St. Michaels District, Talbot County, in violation of the zoning ordinance, and particularly by reason of the threatened erection of a new structure on "The Home Place". On March 20, 1956, a second suit was filed by the County Commissioners of Talbot County and the Planning and Zoning Commission alleging violations, and threatened violation, of the ordinance. Answers were filed alleging that the activities were lawful as a valid non-conforming use. The two suits were consolidated for trial, at which the appellants abandoned their contention as to the "Tide Mill Cove" property, and discontinued its use. After an extended hearing, the Chancellor found that the appellants had a valid non-conforming use with respect to the conduct of the business on "The Home Place", consisting chiefly of the storage of pipe and materials and the parking of trucks and equipment. With respect to the warehouse, which had been partially completed, the Chancellor found that this was an unlawful extension of the non-conforming use. There were no cross-appeals.

The questions presented are, therefore, whether the erection of the warehouse structure on land affected by a non-conforming use, for purposes of the same general character, constitutes an extension of the use, and, if so, whether the Chancellor can properly require the removal of the structure.

The appellants are, and have been since prior to January 1, 1953, the owners of a waterfront property containing 2.2

484

acres of land, improved by a substantial dwelling, a swimming pool and a number of smaller structures, known as "The Home Place", on the south side of Long Haul Creek. In recent years what was originally farm land in this locality has been gradually converted into a suburban, residential development of a high order. About ten substantial homes have been erected, valued at from $25,000 to $65,000, on large waterfront lots. The Miles River Yacht Club is also located on this creek. Aside from a small commercial gravel pit, there is no commercial or industrial enterprise in the whole community. Except where dwellings have been erected, or subdivisions made, the area still retains its character as farmland or woodland.

On or about January 1, 1953, the appellants organized a partnership, under the trade name of Sam Shannahan Well Company, to engage in a commercial well drilling business, consisting of the drilling of water wells in Maryland, Delaware and Virginia, installing pumps, erecting pump houses, pipe lines and electric systems. They made their "Home Place" the headquarters of this business, utilizing portions of the dwelling for office space, and erecting two small buildings. In and about these buildings, and in an area south of the driveway and west of the dwelling, they stored pipe, fittings and motors and parked their trucks and equipment. They also used the area for the assembly of pump houses.

On May 16, 1953, the County Commissioners of Talbot County enacted a zoning ordinance and adopted zoning maps for the County under the Enabling Act, Code (1951), Art. 66B. All of the properties in the vicinity here in question were placed in Zone C—Suburban, with the exception of two properties placed in the more restricted Zone B—Waterfront. Operation of a commercial well drilling business was not, and is not, a permitted use in Zone C.

Subsequent to May 16, 1953, the volume of appellants' business materially increased, but was confined to the same general area on "The Home Place". In December, 1955, the appellants decided to erect a large warehouse building, and purchased used lumber and materials for the purpose. The appellants were advised by the Planning and Zoning Commission on January 16, 1956, that objections had been raised

to the proposed structure, and not to proceed without obtaining a permit or resolution authorizing it. No such permit was applied for. Footings were laid on February 7, 1956, and construction continued until May 1, 1956, when the trial was in progress, at which time the building had been roofed in. It is a two-story structure, 48 feet by 65 feet, and 28 feet high, of unpainted, corrugated metal visible, to some extent at least, from the properties of all the individual appellees. Appellants propose to use the ground floor for storage of equipment and vehicles, and the assembly of pump houses and machinery, the same uses to which the land was put prior to the erection of the building. They propose to use the upper story as a guest house for business and personal friends. Mr. Shannahan testified that if he were not permitted to use the building in connection with the well drilling business, he would probably convert it into a boardinghouse, furnishing rooms but not meals, and a private garage and hobby shop, which are permitted uses. The adaptability of the building for conforming uses was challenged by the appellees. The individual appellees also offered evidence to show that the value of their properties was depreciated by the commercial use of the appellants' property.

The Talbot County zoning ordinance was before this Court in *Walker v. Talbot County,* 208 Md. 72 (cert. denied, 350 U. S. 902), and its validity and constitutionality sustained. For present purposes the pertinent section of the ordinance is "Section XII *Non-Conforming Uses,*" which provides:

> "Any building or use except signs lawfully existing at the time of the adoption of this ordinance, * * * may be continued, even though such building, structures or use does not conform to the regulations of the use District or Zone in which it is located; subject, however to the following provisions:
>
> "A non-conforming use may be extended, not to exceed fifty (50) percent of its area, on land owned or within a building existing at the time of adoption of this Ordinance by resolution of the Commission [defined in Section VII to be the Talbot County Planning and Zoning Commission].

"Structural alterations of a building or structure which does not conform to the provisions of this Ordinance may be made only if the building is being altered to conform to the requirements of the use District or Zone in which it is located.

"No building in which a non-conforming use has been changed to a more restricted use shall again be devoted to a less restricted use. No non-conforming use, once abandoned, shall thereafter be re-established. 'Abandonment' shall be defined as the cessation of a non-conforming use for a period of one month or more.

"No building or structure devoted to a non-conforming use, shall in the event of destruction or serious damage by fire, flood or similar cause, be reconstructed for the purpose of carrying on the non-conforming use. * * * ."

Section VII defines non-conforming use as "A use of a building or of land lawfully existing at the time this ordinance became effective and which does not conform with the use regulations of the zone in which it is located."

We have had occasion in several cases to construe and apply the zoning ordinance of Baltimore City in respect to non-conforming uses. In *Colati v. Jirout,* 186 Md. 652, the appellant, having a non-conforming tavern in a one-story building with a garage in the rear, proposed to raze the buildings and erect a two-story building covering the whole lot. The Board of Zoning Appeals approved the proposal, but the trial court on appeal modified the decision by restraining the applicant for a permit from erecting any structure of more than one story on the area previously occupied by the garage. This was affirmed on appeal, in the absence of a cross-appeal, but it was clearly stated that the Board had no authority to extend the non-conforming use as requested. It was noted that the zoning ordinance provided that "A non-conforming use may not be extended, except as hereafter provided, but the extension of a use in any portion of a building, which portion is now arranged or designed for such non-

conforming use, shall not be deemed to be an extension of a non-conforming use. A non-conforming use may be changed to a use of the same classification or to a use of a higher classification." It was held that the qualifying clause was inapplicable. The exception, which gave the Board discretionary power to permit the horizontal extension of "a use of the same classification, necessary or incidental to a non-conforming use" within 50 feet from such existing non-conforming use, was held to be inapplicable. Conceding that the whole property had been used in the tavern business, it was strongly intimated that the extension of the use to the second floor would have been regarded as an unauthorized extension, for it was noted (p. 658) that the proposed new building would have "a floor space twice that of the entire area of the lot", and it was said that "while continuance of the original non-conforming building might be comparatively unobjectionable, a larger building might cause great damage to the district."

The court relied strongly upon *DeVito v. Pearsall*, 115 N. J. L. 323, 180 A. 202, 147 A. L. R. 170. The New Jersey ordinance was more tightly drawn and has been more strictly construed than in some other states. For a late New Jersey case reviewing the authorities and adhering to the position taken, see *Ranney v. Istituto Pontificio Delle Maestre Filippini*, 119 A. 2d 142 (N. J.). These authorities may be contrasted with *In re Peirce's Appeal*, 119 A. 2d 506 (Pa.), and *Humphreys v. Stuart Realty Corp.*, 73 A. 2d 407 (Pa.), where the ordinance permitted the extension of non-conforming uses under some circumstances.

In *Bruning Bros. v. City of Baltimore*, 199 Md. 602, strongly relied on by the appellants, this Court reversed the action of the trial court and the Board of Zoning Appeals in denying a permit for a new two-story building, to be used for storage purposes, as an addition to a paint factory. The proposed addition was to cover an area 60 feet in width between the existing building and the street. The decision was rested on the ground that the strip had been devoted to a non-conforming use in connection with the non-conforming factory. The City had permitted the erection of a loading platform and

ramp occupying 35 feet of the 60 foot strip, and the owners had used the area for loading, unloading and the parking of vehicles. However, the circumstances were quite unusual. That whole section of the City had been zoned industrial in 1931, and in 1942 the particular block where the factory was in process of construction was rezoned residential, not because of any change in conditions, but to correct what was thought to be an original error, since it contained a number of residences in what had once been known as "Orangeville", an island in an industrial sea.

The only reason that the factory building had not been built out to the street prior to the rezoning was because, when the building plans were submitted to the City, the Planning Department served notice that it proposed to widen the street and wanted to reserve the 60 foot strip. Accordingly, the owners changed their plans and restricted their use of the strip as stated at a time when the whole area was zoned industrial. In 1949, the Planning Department abandoned their plan to widen the street, and the application for a building permit followed. It was contended that to restrict their use to residential would deprive them of any reasonable use of the strip, and since the City had prevented them from extending their industrial use prior to the rezoning, the strip was mistakenly zoned residential at that time. The briefs in the case show that the argument was rested on constitutional grounds and on the ground of special hardship. After discussing these points, the Court said (p. 609): "There is, however, another ground upon which we think appellant is entitled to a permit. * * * [The factory] building, and the additions, and the adjacent land used in connection with the use of the buildings, constitute a non-conforming use in the Orangeville island. The front sixty feet is so used, and the proposed building would only be a change in such a use, and not an extension. (See *Colati v. Jirout*, 186 Md. 652, 657, 47 A. 2d 613.)" It is difficult to find any support for this proposition in the case cited, because the proposed structure was of a different character from the one removed, and occupied a larger area both horizontally and vertically. It also was to be devoted to a somewhat different use, although prob-

ably not of a lower classification. Cf. *Higgins v. City of Baltimore,* 206 Md. 89, and cases cited.

In *Fritze v. City of Baltimore,* 202 Md. 265, 272, we considered an application to erect a one-story building between the street and a greenhouse located on a large lot in Baltimore City, which had been used in a florist business, a non-conforming use. It was held that even if the land, on which the addition was sought to be erected, had been used for access by customers in the florist business and a sign erected thereon, "a larger building would be an extension of that non-conforming use and would be contrary to the Baltimore City Zoning Ordinance", citing *Colati v. Jirout, supra. Bruning Bros. v. City of Baltimore, supra,* was distinguished (p. 273) on the ground that there a loading platform and ramp had been previously constructed. "That case differs from the instant one in the fact that nothing constituting a non-conforming use has been erected on the land here sought for the permit, other than the sign which covers a very small area thereof." We think the holding on the point in *Bruning Bros. v. City of Baltimore, supra,* is inconsistent with the holdings in the prior and subsequent cases, and that it should be overruled. We are now convinced that the case was incorrectly decided, or rested upon the wrong ground.

In some respects the Talbot County zoning ordinance is tighter than the Baltimore City ordinance, and far more restrictive than the Howard County ordinance discussed in *Board of Zoning Appeals v. Meyer,* 207 Md. 389, 397. The Talbot County ordinance protects any building or use lawfully existing, but it does not authorize the erection of a new non-conforming building or any structural addition to an existing non-conforming building. The clauses as to abandonment and destruction are far more severe than in the other ordinances mentioned. We find nothing in the Talbot County ordinance that would permit the non-conforming use of the new building in the instant case merely because a similar use had been established on open land. On the contrary, the language employed seems to impose a double limitation both on the use of land and the use of buildings on land. Thus, the clause authorizing extensions of use, up to 50%

in area, refers to the area of land owned at the time of the adoption of the ordinance, or, in the alternative, to the area within a building existing at such time, and there is no suggestion that such uses are transferable. Even in such extensions, a resolution of the Planning and Zoning Commission is a prerequisite. Again, the clause authorizing structural alterations of an existing non-conforming building forbids such alterations except for the purpose of bringing the use into conformity with the particular use district or zone. It is implicit in all of these clauses that a non-conforming use can neither be changed nor extended, except to the extent specified.

Even though the Chancellor found that none of the appellants' activities amounted to a nuisance, and that the increase in the volume of business was a permissible intensification (Cf. *Nyburg v. Solmson*, 205 Md. 150), on which points there are no cross-appeals, we agree with his conclusion that "the construction of the subject warehouse [for the well drilling business] is an unlawful extension of a non-conforming use and in violation of the Ordinance." Assuming, without deciding, that the individual appellees have failed to show special damages by reason of the erection of the building, as contended, the other appellees are entitled to injunctive relief. Code (1951), Art. 66B, sec. 34.

There is some merit in the finding of the Chancellor that, since the appellants proceeded with construction after notice, they assumed the risk of an adverse holding, and it would not be inequitable to require them to dismantle the incomplete structure. However, the relief granted seems to be predicated almost wholly upon the ground that the structure is unsightly. We find nothing in the ordinance to prevent an owner from erecting an unsightly building, or, indeed, any restrictions upon the dimensions or architectural features of structures that may be lawfully erected in a C Zone. The restrictions are based solely upon use, and we think the injunction should be limited to use. Despite the doubts expressed as to the feasibility of devoting the structure to a conforming use, we think the choice of converting the building to one of the permitted uses, or of removing it, should rest with the

appellants. Cf. *Heath v. Mayor & C. C. of Balto.*, 190 Md. 478, 485. We shall accordingly remand the case for the passage of a decree in accordance with the views here expressed. Because of the remand, and of a dispute as to what should have been included in the joint record extract, we think the costs of this appeal should be divided between the appellants and the appellees.

> *Decree reversed and case remanded for the passage of a decree as indicated, costs to be divided between the parties.*