DONAK *v.* MONTGOMERY COUNTY

[No. 169, September Term, 1957.]

106

*Decided March 24, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT and HORNEY, JJ., and CARTER, J., Chief Judge of the Second Judicial Circuit, specially assigned.

*Kelley Litteral,* with whom were *Edward L. Foster* and *Harold V. Grier* on the brief, for the appellant.

*Joseph P. Blocher* and *Alfred H. Carter, Assistant County Attorneys,* with whom was *Charles M. Irelan, County Attorney for Montgomery County,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellee, Montgomery County, filed a bill of complaint

for a mandatory injunction against the appellant, as the owner of a seven acre tract of land in the County on which she conducted a wood-cutting and wood-selling business. It alleged that the operation was in violation of the applicable zoning regulations; that the manner of operation constituted a public nuisance, by reason of the carrying into the premises of timber which was cut up by power driven machinery, the storage and burning of branches, stumps and trash, resulting in excessive noise, smoke and litter; that the operation was that of a junk yard, lumber yard or sanitary dump, and unlicensed as such. After an extended hearing the Chancellor issued a permanent injunction requiring the defendant to remove all trash and waste materials from the premises, except such cord wood or stumps as may be the product of cutting timber presently on the property; and a permanent injunction against using the property for the cutting or storing of cord wood, except cord wood cut from trees currently growing upon the land. He also enjoined the burning and dumping of waste materials, or any other activity causing an excessive amount of smoke and noise. The appeal is from that decree.

The appellant raises a number of questions. She contends that the Chancellor erred in finding that the use of the property was in violation of the zoning regulations, because the evidence established a non-conforming use; that he erred in finding that a public nuisance existed and that the property was used as a junk yard, lumber yard or dump. She further contends that the appellee could not invoke the court's aid in the abatement of the alleged nuisance, because it did not first exhaust its administrative remedies; that the County has no authority to bring a suit for the abatement of a nuisance, in the absence of a local ordinance so providing, and in the absence of allegations of special damage; and that Chapter 100, Montgomery County Code (1955 Ed.), known as the "Garbage, Rubbish and Weeds" ordinance, is invalid and unconstitutional, as an improper delegation of legislative power to an administrative agency, and because it was adopted without a public hearing.

Section 107-47 of the Montgomery County Code (1955 Ed.), provides: "Nonconforming uses. Any building, struc-

ture or use lawfully existing at the time of adoption of this chapter, or lawfully existing at the time this chapter is subsequently amended, may be continued, even though such building, structure or use does not conform to the regulations of the use district or zone in which it is located; * * *." This section also provides that a non-conforming use of land shall not be extended in any way. The first zoning ordinance in Montgomery County was passed on March 6, 1928. It is conceded that that is the crucial date. Section 107-2(88) defines non-conforming use as "A use of a building or of land lawfully existing at the time this or previous ordinances became effective and which does not conform with the use regulations of the district in which it is located." See also Montgomery County Code (1950 Ed.), Sec. 176-10, providing that "In that portion of the District which lies within the former Maryland-Washington Metropolitan District, a lawful non-conforming use which existed prior to March 6, 1928, may continue * * * limited, however, to the particular use already existing in each case; * * * ." This section provided that upon discontinuance for one year the right should terminate. Under the present ordinance the time is cut to one month. It seems to be conceded that the appellant's property is in the Maryland-Washington Regional District and in the Suburban District. It was zoned residential from the beginning, and is now located in an R-60 Zone, in which a use of the kind in question is forbidden, except as a non-conforming use. Nor can there be any question but that the County has a right to invoke the court's aid to enjoin a violation of the zoning regulations, if any. Montgomery County Code (1955 Ed.), Secs. 107-46 and 73-26. Cf. Code (1957), Art. 66B, sec. 34, of the Public General Laws, and *Shannahan v. Ringgold,* 212 Md. 481, 490.

The testimony as to the use of the property prior to 1928 is very scanty. Mrs. Donak purchased the property in question in 1944 from Mr. James Lindsey. It was part of a larger tract which had been farmed by Mr. Lindsey since 1922 and by his predecessors in title. She and her husband had lived in the neighborhood since 1942, but they had no knowledge of the situation prior to that date. In 1951 they

formed a partnership under the style of Takoma Tree Service, and purchased trucks and power-driven machinery. Mr. Printz, who had resided in the neighborhood and had been familiar with the property since about 1920, testified that Mr. Lindsey kept horses and cows, and raised crops, hogs and chickens there. Mr. Lindsey cut some fire wood with hand saws out of the woods in back of the property. He did not cut any living trees, but "mostly down wood". The witness testified that "He used it for himself. I don't know that any of it was sold." No timber was brought in from any other place. He testified that the Donaks did not cut any wood between 1944 and 1950. They farmed the place and filled in a swampy part. Mrs. Printz testified that her husband's testimony was correct. She couldn't say whether Mr. Lindsey sold any wood or not.

The only other evidence on the point was contained in an affidavit of Mr. Lindsey. We have had occasion to comment upon the weakness of an affidavit as evidence, even when admissible. *Aaron v. City of Baltimore,* 207 Md. 401, 411. He stated that he bought the farm in 1922 and used it for general farm purposes. The "lower field was used as a dump for various types of trash and debris, especially logs, stumps and tree branches which had been brought on the property by the owners or their tenants as a result of their activities in wood-cutting, removal and sale". The appellant also produced testimony that before the partnership was formed in 1951, she permitted a tree company and several contractors to deposit trees, brush, debris and fill dirt on the low ground, and that some of the material was cut into cord wood and sold. On the other hand, the appellee produced several witnesses who testified there was no wood-cutting or burning on the property between 1944 and 1950.

We cannot hold that the Chancellor was clearly wrong in finding that a non-conforming use was not established. It is common knowledge that the cutting of firewood by an owner and his tenants is, or was, a regular incident of a general farming operation. It could hardly be described as a commercial use, even if a few cords were sold to others. Again, the cutting up of waste materials deposited as a part

of a now completed fill hardly amounts to a commercial use, certainly not covering the entire tract. *Boulevard Scrap v. Baltimore,* 213 Md. 6, 12; *Shannahan v. Ringgold, supra; Daniels v. Board of Zoning Appeals,* 205 Md. 36, 38; *Mayor & C. C. of Balto. v. Shapiro,* 187 Md. 623, 635; *Knox v. City of Baltimore,* 180 Md. 88, 94. These activities, if they actually occurred, took place after the crucial date in 1928. We agree with the Chancellor that the present extensive operations, in kind and in extent, are a "far cry" from the casual and usual cutting of cord wood incident to a farming operation long since discontinued.

In view of our conclusion on this point it is unnecessary to discuss the other questions argued. If the wood cutting and wood selling business is discontinued, as ordered, there should be no further accumulation of waste, and the order to remove existing waste can be supported as incidental to the discontinuance of the business. We think, however, that the injunction against activities in violation of the Garbage, Rubbish and Weeds ordinance, and activities causing excessive smoke and noise amounting to a public nuisance, contained in the last two clauses of the third paragraph of the decree, should be deleted. Our affirmance on the first point renders these orders unnecessary at this time, and we leave the questions open.

*Decree modified and, as modified, affirmed, with costs.*