JAHNIGEN, ᴇᴛ ᴜx. *v.* STALEY, ᴇᴛ ᴀʟ.

[No. 531, September Term, 1965.]

132

Decided January 9, 1967.

The cause was argued before HAMMOND, C. J., and MAR-BURY, OPPENHEIMER, BARNES and FINAN, JJ.

*Jerome F. Connell,* with whom were *Biener & Connell* on the brief, for appellants.

*Nicholas Goldsborough* for appellees.

MARBURY, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Anne Arundel County, Judge Sachse presiding, which restricted appellants' (William Jahnigen and wife) non-conforming use of their property, fronting on Broad Creek for approximately 263 feet, to the rental of seven rowboats and to the rental of space for the dockage or wet storage of boats at a wharf not exceed-

ing ninety feet of overall length and six feet in width together with a twenty-four foot long and six foot wide "T" at the end of the wharf. It was also decreed that the launching facility constructed by appellants was an unlawful expansion of a non-conforming use and that they had no right to maintain dry storage or to repair boats, other than the seven rowboats, on their property.

Appellants acquired the waterfront property, approximately four acres in the Third Election District of Anne Arundel County, by deed dated December 14, 1962, from Stanley H. Kirchenbauer and wife, who acquired their title in 1945. In the years prior to February 15, 1949, when the comprehensive zoning ordinance for the Third Election District of Anne Arundel County became effective, placing the property in an agricultural classification, the Kirchenbauers constructed (in 1946) a ninety foot long pier with a twenty-four foot T and rented up to seven rowboats and approximately ten slips. The zoning ordinance restricted any non-conforming use to those uses in effect prior to the date of its adoption. On July 6, 1951, they were issued a non-conforming use certificate on which was stated, "Hiring of Rowboats." During 1951, they rented out sixteen rowboats and ten slips. In 1952, they increased the slip rental to twenty, but cut down on the renting of rowboats. In that year the Kirchenbauers also built a 104 foot pier, without first securing a permit, parallel to and about thirty-two feet from the shoreline. This pier was connected to the left side of the ninety foot pier about thirty-two feet from the shore. They built a garage in 1953 and a stable in 1954. They provided no toilet facilities except for those in their home, which they would allow others to use on occasions. Between 1947 and 1952 people would pull their boats upon the property in the winter until about April or May, at various places and at various times. Mr. Kirchenbauer occasionally put his own boats in the garage for repairs, but he did little boat repair work for others. He had no facilities for the launching of boats, and when he did launch them it would not always be at the same place. This was an occasional operation, a dozen times in about fifteen years, and this operation required men to snake the boats down the hillside to the water.

134

In 1962 the Kirchenbauers purchased a twenty-five foot strip of land from a neighbor on the north side of the property, and appellants purchased the entire property from the Kirchenbauers in late 1962. In the advertisement of the property for sale, twenty-five boat slips and nine rowboats were mentioned. In May of 1963, William Jahnigen requested and received a permit to repair ice damage to the existing ninety foot pier with the T. When he applied for the permit, he misrepresented the ninety foot original pier as having been 130 feet, claiming that the original pier was 130 feet, the last forty feet of which he said was damaged by ice and had to be replaced, but the forty feet of pier never existed. In August of that year, the Jahnigens petitioned the Board of County Commissioners of Anne Arundel County to rezone 1.5 acres of their property from its agricultural use to heavy commercial use, primarily for the purpose of allowing sales of gasoline in connection with the operation of the marina that was already in existence on the property. On August 8, 1963, the Board of County Commissioners granted the petition, and later that month appellants requested and were granted a permit to extend the pier and to construct a travel lift ramp for the launching of boats, and gas pumps. In the construction under the permit of August 1963, appellants built two toilets and other improvements, and the pier they actually built bore no relation in appearance, size or direction to the one for which they received the permit. As the result of the rezoning, some of the appellees filed a bill of complaint in the Circuit Court for Anne Arundel County to set aside the rezoning. The bill of complaint also sought an injunction to limit the nonconforming use and to restrict the property in such a way that the Jahnigens could only use it for the hiring of rowboats.

For the purpose of clarity, the court below divided the case into two parts. The first part concerned the question of whether the rezoning was valid, and the second part dealt with the extent of the existing non-conforming use. In the trial of the first part, the court below found the rezoning to be null and void. The appellants have not appealed from this finding. Prior to the hearing of the second part of the case on the merits, the appellants filed a motion raising preliminary objection to the right of the appellees to bring such an action. The motion was

overruled and the court found in favor of the complainants after the trial on the merits. The appellants contend that the chancellor erred in overruling their motion and in imposing certain restrictions on the non-conforming use of the property.

A party has standing to contest a rezoning decision by appeal to the courts if the decision affects his specific interest or property right in a way different from that suffered by the public generally. *Alvey v. Hedin,* 243 Md. 334, 221 A. 2d 62; *DuBay v. Crane,* 240 Md. 180, 213 A. 2d 487.

It is evident from the record that the protestants are within the class as defined above "because their closeness to the marina property, their special problems with lights and noise as well as with the refuse emanating from the operation of the marina, make the effect of this commercialization on them different from its effect upon members of the public generally." *Alvey v. Hedin, supra,* at page 339.

Mr. Edmund Birk, one of the protestants who owns the property adjacent to the Jahnigen property on the south side, testified that the cruisers which were moored at the Jahnigen property pumped their bilges and deteriorated his waterfront property, and that he would not swim in the creek due to the fact that the boats had toilet facilities.

Mr. Otis B. French, another protestant whose property is located 125 feet at the water line from the Jahnigen property, testified that due to the increased facilities and activities, the value of his property deteriorated considerably and that peace and quiet had departed. He testified that he was reluctant to swim in the creek because of the increased summer boat traffic which came very close to the front of his property and because of the increased junk and debris in the water, including beer cans, bottles, spoiled food and other refuse.

Mr. William Staley testified that the increased facilities had devalued his property which is about 300 yards southwest from the appellants' property, directly across the water. He testified that he had been unable to sell his property, even though it had been on the market for ten months, because of the fact that the marina was operating directly across from his property. He also stated that an extremely bright light on the Jahnigen property shone into his house every night and that the Jahnigen

workboats had covered the whole east end of the creek with an oil slick.

An expert real estate appraiser, Maurice C. Ogle, who was thoroughly familiar with the property, was called by the appellees; and he stated that the increased operations of the appellants had an adverse effect on the value of the surrounding property.

Appellants argued that the amount of water area used by them was less than that used by the Kirchenbauers, the former owners, in that the former owners had several boats tied to buoys off the end of the T on the original ninety foot pier. The appellants contended that the construction of the additional pier facilities constituted a mere intensification of the non-conforming use as opposed to an expansion of the use.

The Anne Arundel County Code (1957 ed. as amended), Section 35-10, page 882, defines the continuance of a non-conforming use as the occupation of the same building area, measured in cubic feet, and the same ground area or water area, measured in square feet, as was occupied on the effective date of the ordinance. Building area, ground area, and water area are to be considered separately and one may not be substituted for the other. The Kirchenbauers and the appellants increased the non-conforming use of the piers from 648 square feet, which existed at the time of the effective date of the zoning ordinance, to 2,526 square feet. Whether or not the Jahnigens used less water area, the fact remains that the original non-conforming use was expanded by the extension of the original pier and by the construction of new piers and other facilities. The facts of this case are analogous to those in *Orange County v. Goldring*, 263 P. 2d 321 (Cal. App. 1953), where defendant, at the time he obtained a non-conforming use, used a field for the feeding of approximately thirty to fifty cattle. He later built permanent feed pens for 200 to 300 cattle. The court said in holding that this was an invalid extension of a non-conforming use:

> "It is quite apparent that there was a material change in the condition of the use by the construction of the feeding pens described, by the building of permanent foundations for watering troughs, and no doubt the number of cattle now confined in the limited quarters

where cattle are being fattened for market by feeding the new formula, caused added noise, stench, and disagreeable odors, which disturb the near-by residents and school children. The facts found clearly demonstrate that the present use is such a formidable change and departure from the established use, both in magnitude and character, that it constitutes a wholly new and different use, and an unlawful enlargement or extension of a non-conforming use, * * *." 263 P. 2d at 323.

The basic premise underlying zoning regulations is to restrict rather than expand non-conforming uses. *Phillips v. Zoning Commissioner*, 225 Md. 102, 169 A. 2d 410; *Grant v. City of Baltimore*, 212 Md. 301, 129 A. 2d 363; *Colati v. Jirout*, 186 Md. 652, 47 A. 2d 613. However, an intensification of a non-conforming use is permissible so long as the nature and character of the use is unchanged and substantially the same facilities are used. *Phillips v. Zoning Commissioner, supra; Nyburg v. Solmson*, 205 Md. 150, 106 A. 2d 483. In *Nyburg* the area of the property which was under a prior non-conforming use as a parking area for a garage was not enlarged, but the volume of cars parked thereon was increased from a small number to about thirty to fifty. This was held to be a mere intensification of the non-conforming use, and the restrictions imposed by the zoning board limiting the space used for parking to ten vehicles at one time were struck down.

In the case at bar, the chancellor limited the rental of rowboats to seven and restricted the rental of space for the dockage or wet storage of boats at the ninety foot pier with the twenty-four foot T at its end. He also found that in light of Section 35-38 (g) (4) of the Anne Arundel County Code, *supra,* which provides that piers for private use are permitted in an agricultural zone only as accessory buildings or uses to the permitted residential use, the 104 foot pier, erected approximately thirty-two feet out from the bulkhead, built in 1952 and attached to the original ninety foot pier, was a reasonable accessory to the part of the appellants' property that was agricultural and for residential use. He ordered that the other piers

erected by the appellants be removed. We agree that the construction of new pier and other facilities, and the rental of space for the dockage or wet storage at any facilities other than the ninety foot wharf and T, which were in existence prior to the effecive date of the zoning ordinance, were invalid extensions of the non-conforming use. However, we hold that the rental of rowboats can not be so limited. Any increase in the number of rowboats rented would be an intensification of non-conforming use and would not be an extension. *Nyburg v. Solmson, supra.*

The right of a landowner to continue the same kind of use to which the property was devoted on the critical date does not confer on him the right to subsequently change or add to that use a new and different one amounting to a drastic enlargement or extension of the prior existing use. *Phillips v. Zoning Commissioner, supra.* Appellants argued that the launching of boats by means of a travel lift and ramp was an intensification of the launching that was done by the Kirchenbauers. The evidence showed that only a dozen or more boats were launched in the years prior to the enactment of the ordinance. There was no permanent launching site nor structures to aid in the launchings. Boat launching was performed at no specific place during the years the Kirchenbauers owned the property, and it was so infrequent as not to have been part of their business. The testimony as to the launching of boats was too vague and inconclusive to establish that such use was regularly made before 1949, or that it was carried on thereafter. *Boulevard Scrap v. Baltimore,* 213 Md. 6, 130 A. 2d 743; *Daniels v. Board of Zoning Appeals,* 205 Md. 36, 106 A. 2d 57. The launching ramp was constructed on the twenty-five foot strip which the Kirchenbauers purchased in 1962. The appellants can not now set aside that particular portion of their property and construct a launching ramp. *Chayt v. Zoning Appeals Board,* 177 Md. 426, 9 A. 2d 747. Although the Kirchenbauers may have intended to provide such services attendant to a marina, such intention to use is not enough to establish a non-conforming use. *Beyer v. City of Baltimore,* 182 Md. 444, 34 A. 2d 765; *Chayt v. Zoning Appeals Board, supra.*

As to the storage of boats on the property, there was nothing in the record to show that the former owners allowed in-

dividuals other than themselves to store or repair boats on their property, other than at the shoreline, prior to the adoption of the zoning ordinance. After the ordinance was passed a few boats belonging to others were stored on the property, but again the number was insignificant. Also there was little repair work done on boats other than on the ones that were owned by the Kirchenbauers. Again the testimony as to the storage, repair and maintenance of boats other than those owned by the Kirchenbauers was too vague and inconclusive to establish that such use was regularly made before 1949. *Boulevard Scrap v. Baltimore,* and *Daniels v. Board of Zoning Appeals,* both *supra.*

We affirm the decree of the chancellor in all respects except that portion thereof which restricted the rental, dry storage, repair or maintenance to the seven rowboats owned by the appellants, which is modified so as to permit the rental of rowboats which appellants might own and the storage, repair, and maintenance of those rowboats.

> *Decree modified, and as modified affirmed. Costs to be paid by appellants.*