## LEONARD E. WILSON ET AL. *v.* MAYOR AND COMMISSIONERS OF THE TOWN OF ELKTON

[No. 191, September Term, 1976.]

*Decided April 6, 1977.*

The cause was argued before MORTON, POWERS and MELVIN, JJ.

*Doris P. Scott* for appellants.

*O. Robert Lidums,* with whom was *Eugene F. Herman* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

The zoning ordinance of the Town of Elkton, adopted in

1963, recognized the continued right to lawful existence of lots, structures, and uses which the terms of the ordinance would not otherwise permit. It provides, Art. I, Sec. 4, Subsection 1:

> "*Intent* — Within the zones established by this ordinance or amendments that may later be adopted there exist lots, structures, and uses of land and structures which were lawful before this ordinance was passed or amended, but which would be prohibited, regulated, or restricted under the terms of this ordinance or future amendment.
>
> It is the intent of this ordinance to permit these non-conformities to continue until they are removed, but not to encourage their survival. Such uses are declared by this ordinance to be incompatible with permitted uses in the zones involved. It is further the intent of this ordinance that non-conformities shall not be enlarged upon, expanded or extended, nor be used as grounds for adding other structures or uses prohibited elsewhere in the same zone.
>
> A non-conforming use of a structure, a non-conforming use of land, or a non-conforming use of a structure and land shall not be extended or enlarged after passage of this ordinance by attachment on a building or premises of additional signs intended to be seen from off the premises, or by the addition of other uses of a nature which would be prohibited in the zone involved."

Subsection 4 provides:

> "*Non-Conforming Structures* — Where a lawful structure exists at the effective date of adoption or amendment of this ordinance that could not be built under the terms of this ordinance by reason of restriction on area, lot coverage, height, yards, or other characteristics of the structure or its location

on the lot, such structure may be continued so long as it remains otherwise lawful, subject to the following provisions:

a) No such structure may be enlarged or altered in a way which increases its non-conformity; * * *."

Owned by a Mrs. Minnie Rooney from 1960 until she sold it in September 1974, the property involved in this appeal consists of a lot and house known as 143 Main Street, located at the corner of Church Street, in the Town of Elkton. The lot is said to be 14½ feet wide and 87 feet long, with a total area of less than 1,300 square feet. It was originally classified in and remains in the Residential-Office Zone R-O, which generally permits multiple family and office uses.

The minimum requirements for a conforming lot in the R-O zone are that it have an area of 6,500 square feet, a width of 60 feet, a front yard of 20 feet, a rear yard of 30 feet, and a side yard of 5 feet. For a structure having two or more dwelling units, the lot must have a minimum area of 2,000 square feet per dwelling unit. A structure in the R-O zone may not cover more than 50% of the area of the lot.

The structure in this case, a three story house the same width as the lot, and 60 feet from front to back, leaves no front yard on Main Street or on Church Street, no side yard, and less than the required rear yard.

From the time the zoning ordinance was enacted in 1963, Mrs. Rooney's lot and structure enjoyed the right to continue to exist, subject to the non-conforming use provisions of the ordinance, although neither conformed with the requirements of the R-O zone.

In September, 1974, Dr. Charles V. Pasqualini, Jr. purchased the property from Mrs. Rooney. He promptly applied to the Board of Zoning Appeals for the Town of Elkton for a variance, to permit him to construct a new outside stairway to the second and third floors, on the rear of the building. The Board, after a hearing at which Leonard E. Wilson, a neighboring property owner, protested, granted the variance. Mr. Wilson and his wife appealed to the Circuit

Court for Cecil County, which reversed the decision of the Board of Appeals. The court did so because the Board failed to make findings of fact, which the ordinance required it to do. The court said in reversing the Board that "the granting of the variance was not in accordance with the law," but specifically stated that it did "not decide the question of whether * * * [the Board's action was] arbitrary, capricious and discriminatory."

Thereafter a new application was submitted to the Board by Dr. Pasqualini, requesting a variance "to provide a rear fire escape from the three existing apartments at this address to comply with the State Fire Marshal's Office which requires this access pursuant to State Fire Prevention Code * * *." The application was expressed in greater detail in an amendment made at the hearing before the Board, and accepted by it.

Significant evidence at the hearing before the Board of Appeals was given by Dr. Pasqualini and by Mr. Wilson. Dr. Pasqualini described the building. He said it was a house with three floors; that Mrs. Rooney had lived on the first floor, and had apartments on the second and third floors. The apartments were not occupied when he settled for the property in September 1974, but had been occupied when he negotiated with Mrs. Rooney around June or July. The first time he was in the property was in 1973.

Explaining why he wanted the variance, Dr. Pasqualini said that the first floor had front and rear entrances or exits; from the second floor one could go down the interior stairway to the first floor, or from a platform at the rear, down an outside stair to the ground; but from the third floor the only ingress or egress was through the second floor apartment. He said he had learned that he needed another exit from the third floor, and proposed to build an outside stairway from the rear of the third floor to an enlarged platform at the rear of the second floor. After learning of the requirement of the Fire Prevention Code, he had asked the office of the State Fire Marshal to give him a letter.

The letter, dated May 1, 1975, from John H. Farrell, Assistant Chief Fire Investigator, referred to an inspection

made the day before. It said that the State Fire Prevention Code required that every living unit shall have access to at least two separate exits which are removed from each other by travelling in different directions. The letter also said that the exterior stairs being built would be acceptable as complying with the requirement.

A named protestant, who did not testify, was Glen Wilson, owner of the adjoining property, No. 145 Main Street, a two story single family house, about 14 feet wide. The tenant in that house, a Mr. Hopkins, testified about the effect of the variance on other property.

Leonard E. Wilson testified that he owns and lives in the single family house at No. 147 Main Street. He also owns No. 149, where he maintains a law office, and No. 151. He said that he purchased the property at No. 149-151 in April, 1966. Some time before that, he had been shown the Rooney house, which was listed for sale, and had looked at it with the idea of purchasing it.

Mr. Wilson testified that Mrs. Rooney used the first floor for living and the second floor for sleeping, and there was a separate apartment on the third floor. He said that there was no kitchen facility on the second floor, and the second floor was not used as a separate apartment. Mr. Wilson said that he purchased and moved into No. 147 Main Street in 1967, and saw and visited with Mrs. Rooney in her house on occasion. Several years later, about 1971, Mrs. Rooney had a deck at the rear of the second floor closed in and a kitchen installed. There had been none until that time.

The hearing before the Board of Appeals was held on 25 June 1975. On 21 July 1975, the Board filed a majority opinion in which the requested variance was granted. An order for appeal and the required petition, Maryland Rule B2, were filed in the Circuit Court for Cecil County on behalf of the protestants. The applicant did not intervene. The appeal was heard on the record, supplemented by the testimony of one witness, and on arguments of counsel.

The witness whose testimony was heard by the court was the Assistant Chief Fire Investigator, whose letter was in

evidence at the Board hearing. He testified that he wrote the letter after he visited the premises at Dr. Pasqualini's request. He said there was some discussion of the number of dwelling units, but that he did not go inside the premises. He also testified that if there were two dwelling units in the building, his department would have no jurisdiction and no enforcement powers, but if there were three dwelling units in the residence, his office would have jurisdiction, and the letter would be applicable.

The court, J. Albert Roney, Jr., Judge, sustained the order of the Board of Zoning Appeals granting the variance. This appeal was taken by the protestants.

Appellants contend that the lower court erred in holding that the action of the Board of Appeals was not arbitrary, capricious, or illegal, and that the court erred in failing to exercise the proper scope of judicial review in determining the issues. They argue that the Board of Appeals did not comply with the requirements of the zoning ordinance with respect to variances, and that the alleged requirements of the Fire Marshal, upon which the Board placed undue emphasis, were not applicable. Appellants contend that the Board did not make the findings of fact required by the ordinance. Particularly, the appellants emphasize, the Board did not find as a fact whether the structure, at the time it became non-conforming, consisted of three apartments, or two apartments. The issue was a significant and perhaps a controlling one.

The trial judge expressed concern at the close of the court hearing that, as to some questions, the Board had reached conclusions instead of finding facts. In his written Opinion and Order the judge set out what he said the Board had concluded, but held that the Board had resolved each of the issues it was required to determine. With respect to the issue of whether the building contained three apartments, the court said:

"There was testimony from which the Board might
find, as they apparently did, that it was a
three-apartment unit. As this question was the

primary issue in the case, the better practice would have been for the Board to have made a positive finding of that fact; however it is inherent in the conclusion that it reached, i.e., that the erection of the fire escape 'is not an enlargement or extension of a non-conforming use', it did so."

The ordinance, Art. IV, Sec. 3, Subsection 3, gives the Board of Appeals the power to authorize in specific cases,

"such variance from the terms of this ordinance as will not be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of this ordinance would result in unnecessary hardship."

The Subsection states that a variance shall not be granted unless a written application is submitted, demonstrating certain requirements, after which the Board gives notice of and holds a public hearing, and makes certain findings. The findings which the ordinance requires the Board to make are:

d) That the application demonstrates:
    1) That special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are not applicable to other lands, structures, or buildings in the same district;
    2) That literal interpretation of the provisions of this ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this ordinance;
    3) That the special conditions and circumstances do not result from the actions of the applicant;
    4) That granting the variance requested will not confer on the applicant any special privilege that is denied by this ordinance to other

lands, structures, or buildings in the same zone.

e) That the reasons set forth in the application justify the granting of the variance, and that the variance is the minimum variance that will make possible the reasonable use of land, building, or structure;

f) That the granting of the variance will be in harmony with the general purpose and intent of this ordinance, and will not be injurious to the neighborhood, or otherwise detrimental to the public welfare.

The Board of Appeals said in its Opinion that:

"In sifting and considering the pro and con testimony in this case, the Board finds as a matter of fact that:

(1) The special condition or circumstance, requiring this appeal is peculiar to this property and improvement for reasons heretofore mentioned and reflected, in detail, in the record.

(2) Literal enforcement of the Ordinance would deprive applicant use of the third floor of his dwelling, a right commonly enjoyed by other properties in the locale.

(3) The existence of circumstances requiring a variance (non-conformity) is not a result of actions on applicant's part.

(4) Granting a variance will not confer any special privilege, denied to others, on applicant.

Lastly, the Board adopts the essential reasoning of Opinion #139 to the effect that fire escape erection in the instant case is not an enlargement or extension of a non-conforming use, but is merely an accommodation to the structure with the nature and character of use being unchanged; this would not be a change in the existing building to such degree as to be an effective conversion materially

changing the use or prolonging the life of the non-conformity.

"Additionally, the Board considers the requirement of the Fire Marshal as a factor of heavy importance in granting the variance; if the fire escape is not permitted, applicant is deprived of use of the third floor.

"In view of the facts and records as presented in this case, pursuant to Section 3-3 of the Ordinance, this Board feels a relaxation is justified in order to permit this minimum variance which will permit reasonable use of the premises."

The law applicable to non-conforming uses has been stated in many cases. In *Jahnigen v. Staley*, 245 Md. 130, 225 A. 2d 277 (1967), the Court of Appeals said, at 137:

"The basic premise underlying zoning regulations is to restrict rather than expand non-conforming uses. *Phillips v. Zoning Commissioner*, 225 Md. 102, 169 A. 2d 410; *Grant v. City of Baltimore*, 212 Md. 301, 129 A. 2d 363; *Colati v. Jirout*, 186 Md. 652, 47 A. 2d 613. However, an intensification of a non-conforming use is permissible so long as the nature and character of the use is unchanged and substantially the same facilities are used."

The Court said further, at 138:

"The right of a landowner to continue the same kind of use to which the property was devoted on the critical date does not confer on him the right to subsequently change or add to that use a new and different one amounting to a drastic enlargement or extension of the prior existing use."

A similar statement of the law had been made in *Phillips v. Zoning Commissioner*, 225 Md. 102, 169 A. 2d 410 (1961), where the Court said, at 109-110:

" * * * the spirit underlying zoning regulations is to restrict rather than increase nonconforming uses. 1

Yokley, *Zoning Law and Practice,* § 153; 2 Rathkopf, *Law of Zoning and Planning,* § 59-1; *Colati v. Jirout,* 186 Md. 652, 47 A. 2d 613 (1946). The question, however, as to what is an extension or enlargement of a nonconforming use is ordinarily one of fact, and in determining it the question in each case must stand on its own facts. 101 C.J.S., *Zoning,* § 189.

"While it is true that mere intensification of a nonconforming use is permissible so long as the nature of use is not substantially changed, it is generally recognized that the right of a landowner to continue the same kind of use to which the property was devoted on the critical date does not confer on him a right to subsequently change or add to that use a new and different one amounting to a drastic enlargement or extension of the prior existing use."

Distinguished from a prohibited *extension* of a non-conforming use is what the courts look upon as a mere intensification of the existing lawful use. Examples found in the Maryland cases are *Nyburg v. Solmson,* 205 Md. 150, 106 A. 2d 483 (1954) (storage or parking of a greater number of automobiles on the same parking lot) and *Feldstein v. Zoning Board,* 246 Md. 204, 227 A. 2d 731 (1967) (increase in quantity and height of scrap metal stored on a junkyard).

The key to the present case, as we see it, is whether there was a lawful non-conforming use of the Rooney house as a building containing three dwelling units. A dwelling unit is defined in the ordinance, Art. II, as:

"A group of rooms located within a building and forming a single habitable unit with facilities which are used or intended to be used for living, sleeping, cooking, and eating purposes."

Judge Roney noted that the Board made no positive finding, but felt that inherent in the Board's conclusion was a finding that it was a lawful three-apartment building. He

said that there was evidence from which the Board might so find. No such evidence is in the record. Dr. Pasqualini never saw the inside of the building before 1973. The testimony of Mr. Wilson stands uncontradicted and uncontroverted that from 1964 or 1965 until about 1971, there were two, and not three, dwelling units in the building.

It is true that there was no direct evidence of the conditions in 1963, but even if a third unit existed at that time, it was later abandoned. Under the ordinance, Art. I, Sec. 4, Subsection 5 (e), a non-conforming use discontinued or abandoned for six consecutive months is lost.

If the Board's conclusion implied a finding that the house was lawfully used for three dwelling units, such a finding was not supported by evidence, and was arbitrary and illegal.

A requirement of the State Fire Prevention Code precipitated the request for, and the justification for the variance. But the applicability of that Code was premised upon the use of the building to house three dwelling units. It approaches the ridiculous to say that the unlawful extension of the non-conforming use from two units to three units entitles the owner to the blessing of legitimacy for the violation of yet another law.

That the unlawful extension was not the act of Dr. Pasqualini, the present owner, but of his predecessor, is immaterial. The rule is well stated in 2 Rathkopf, *Law of Zoning and Planning*, § 48-1 (1972), as follows:

> "Where property, due to unique circumstances applicable to it, cannot reasonably be adopted to use in conformity with the restrictions of the zoning ordinance, hardship arises which is capable of being relieved through the grant of a variance. The restrictions of the ordinance, taken in conjunction with the unique circumstances affecting the property must be the proximate cause of the hardship. If the peculiar circumstances which render the property incapable of being used in accordance with the restrictions contained in the

> ordinance have been themselves caused or created by the property owner or his predecessor in title, the essential basis of a variance, i.e., that the hardship be caused *solely* through the manner of operation of the ordinance upon the particular property, is lacking. In such case, a variance will not be granted; the hardship, arising as a result of the act of the owner or his predecessor will be regarded as having been self-created, barring relief."

The finding of the Board of Appeals that the circumstances requiring the variance are not the result of actions on the applicant's part must be read to mean the applicant, or his predecessor. When so read, the finding is directly contrary to the evidence, and must be rejected.

Another finding, that the applicant would be deprived of the use of the third floor of his dwelling, is equally without evidentiary support. All three floors may lawfully be used, as they were for several years by Mrs. Rooney, to accommodate two dwelling units, without any outside structural changes, and without requiring a variance.

A somewhat analogous set of circumstances existed in *Salisbury Bd. v. Bounds*, 240 Md. 547, 214 A. 2d 810 (1965). An owner, without the benefit of a building permit, but apparently through an inadvertent error in measurement of his lot size, had converted a building for use as a four family dwelling. The applicable ordinance permitted three units, but not four. The owner sought a variance, which was denied by the Salisbury Board of Zoning Appeals. The circuit court reversed, and ordered that a building permit and variance be granted. The Court of Appeals reversed the circuit court. After quoting from Rathkopf, *supra*, the Court said, at 555:

> "The instant case fits squarely within the above general rule. The construction of the fourth apartment and the resultant hardship could have been avoided if the appellees had used proper diligence in ascertaining what the density requirements were for a four apartment dwelling

within the district in which this property is located, and then made accurate measurements to see if this particular property met the square footage requirements. The hardship here relied on was entirely self-created and the Board properly refused to allow it to be used as a fulcrum to lift, by way of a variance, the valid limitations imposed by the Salisbury Zoning Code.

"Aside from the fact that the hardship shown to the Board was self-inflicted, it was also shown to be of a purely financial nature, i.e., that the applicants' return on their investment would be somewhat lower if the fourth apartment should remain unoccupied. Here the appellees made no attempt to show that further structural changes could not be reasonably made so that all the space in the house could be utilized in three apartment units, or that if the fourth apartment remained vacant the return on their investment would be other than reasonable. Under these circumstances we think the Board would have been correct in denying them the requested variance even if the hardship upon which it was based had not been self-inflicted."

The action of the Board of Zoning Appeals of the Town of Elkton in granting the variance to Dr. Pasqualini was illegal. The circuit court should have reversed the order of the Board. We shall so do.

> *Orders of the circuit court and of the Board of Zoning Appeals reversed.*
> *Appellee to pay costs.*