## CASSIDY ET AL. *v.* BALTIMORE COUNTY BOARD OF APPEALS ET AL.

[No. 125, September Term, 1958.]

420

*Decided December 22, 1958.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT and HORNEY, JJ.

*James N. Phillips,* with whom were *Leonard A. Vadala* and *Fletcher Krause* on the brief, for the appellants.

*Wilmer H. Driver,* with whom were *John Grason Turnbull* and *Paul S. Clarkson* on the brief, for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Baltimore County, filed June 13, 1958, affirming an order of the County Board of Appeals of Baltimore County (Board) granting the appellee, Baltimore Gas and Electric Company, (hereinafter referred to as the "Gas and Electric Company" or the "Company") a special exception subject to certain conditions and restrictions, which authorized the construction of a steam electric generating station and related facilities on Carroll Island Neck between Saltpeter and Seneca Creeks, in the 15th Election District of Baltimore County.

I

The first, and one of the principal, contentions of the appellant is an attack upon the jurisdiction of the Zoning Commissioner (Commissioner) who originally granted a special exception upon an application for reclassification, and the jurisdiction of the subsequent tribunals that considered the case. They argue that neither the Commissioner nor the Board of Zoning Appeals had authority, express or implied, to grant a special exception when no application had been made therefor, and when the petitioner had applied only for a change of classification and the notice to the public did not specifically mention a request for a special exception, but stated only that a reclassification was sought. Counsel for all parties concede that they have been unable to find a case wherein this exact question has been decided, and we have found none.

It has been stated so frequently and so generally that the failure of an administrative official or board to give a proper

notice of a hearing, required by law, is fatal to the jurisdiction of the official or the board to conduct the hearing that it requires no citation of authority to support the proposition; [1] hence, we must examine the notice and the proceedings to determine whether the Commissioner and the Board lacked jurisdiction to grant the special exception.

No question is raised concerning the enabling legislation, a discussion of which will be found in *Huff v. Bd. of Zoning Appeals,* 214 Md. 48, 133 A. 2d 83; so, we shall confine our consideration in this case to the notice and the Zoning Regulations.

The notice given by the Commissioner was as follows:

"Pursuant to petition filed with the Zoning Commissioner of Baltimore County for change or reclassification from a R.6 Zone to a M. H. Zone of the property hereinafter described, the Zoning Commissioner of Baltimore County, by authority of the Zoning Act and Regulations of Baltimore County, will hold a public hearing in Room 108, County Office Building, 111 W. Chesapeake Avenue, Towson, Maryland:

"On Wednesday, May 8, 1957, at 10:00 A.M.
"to determine whether or not the following mentioned and described property should be changed or reclassified as aforesaid for Manufacturing Heavy to wit: (here followed a detailed description of the property)

"Containing 138 acres of land, more or less, of which 6.8 acres is submerged land, as shown on

---

1. There is, however, authority to the effect that lack of constructive notice, in accordance with technical statutory requirements, is waived by a party's appearance at, and participation in, the proceedings. *Carson v. Board of Appeals of Lexington,* 75 N. E. 2d 116, 118, 119, (Mass.); *Hirsch v. Zoning Bd. of Pawtucket,* 187 A. 844, (R. I.); *Harrison v. Zoning Bd.,* 59 A. 2d 361, 365, (R. I.); *Wilson v. Union Township,* 9 A. 2d 771, 772, (N. J.); *De Luca v. Board of Supervisors,* 286 P. 2d 395, 398, (Cal.).

plat plan filed with the Zoning Department, being property of Baltimore Gas and Electric Company.

By Order of

WILSIE H. ADAMS
Zoning Commissioner of
Baltimore County."

No claim is made against the sufficiency of the publication of the notice; the attack is based only upon the fact that the notice did not specifically name a request for a special exception.

Section 500.2 of the Zoning Regulations provides, in part, as follows:

"500.2—In cases in which the permit applied for shall be for a use not permitted under regulations then in effect, the Zoning Commissioner may entertain a petition for the reclassification of such property. Such petition shall be filed by the legal owner of such property on forms adopted by the Zoning Commissioner. * * * Upon filing of such petition, the Zoning Commissioner shall set a time for public hearing thereon and shall give notice of the time and place of such hearing by advertisement in a newspaper of general circulation in Baltimore County for at least fifteen days prior to the date of such hearing, and shall cause the property sought to be reclassified to be posted with an appropriate notice of such petition and the time and place of such hearing."

And section 500.5 states:

"500.5—In cases of petitions for Special Exceptions under Section 502 of these regulations, the Zoning Commissioner shall receive such petitions in such form as he may prescribe. He shall hold a public hearing thereon after giving public notice of such hearing as above provided with respect to petition for reclassification. After such a hearing he shall pass his Order granting or refusing such Special Exception."

Thus it is seen that the notice required in cases of petitions for special exceptions is identical with that required for petitions for reclassification; and, nowhere in the regulations is it explicitly prescribed that the notice must contain the words "special exception," in order to authorize the Commissioner to grant one. Professor Merrill has this to say concerning the sufficiency of notice in administrative procedure:

"In the first place, I think we may say that the notification, to be effective, must clearly apprise the noticee that he is to defend his interests with respect to action yet to be taken rather than create in him the impression that appearance on his part is futile because a final decision already has been achieved. But, the monition must be read by the noticee in the light of the provisions of the law under which it is given, and in that light statements may appear clearly to relate to contemplated action despite some awkwardness of phrase.

"In the second place, the notification must indicate the authority under which the administration is acting and the facts which bring the matter within its jurisdiction. A monition of a proceeding of one character may not be used as the foundation for action of a different sort, though it may bear some relation to the subject of the original hearing. The notification is adequate if it fairly informs the noticee of the nature of the proceedings and the capacity in which he is required to appear and answer.

"Finally, and here is the heart of the requirement of notification in administrative proceedings, the noticee should be apprised clearly of the character of the action proposed and enough of the basis upon which it rests to enable him intelligently to prepare for the hearing. If this minimum requirement is met, the notification is adequate, no matter how much it may fall short of the standards of pleading in judicial contests."

2 Merrill, *Notice*, Sec. 796.

The Board, in its able opinion, in answering the protestants' argument that different standards of proof apply to petitions of reclassification than do to special exceptions and that constitutional requirements concerning notice, therefore, had not been met by advertising and posting for a reclassification, pointed out that all matters of proof which must appear to support a special exception case, plus either a showing of error in the original zoning or a substantial change in neighborhood conditions, must be established in a reclassification case. It cited as authority the case of *Price v. Cohen,* 213 Md. 457, 132 A. 2d 125, where a reclassification was denied because a situation detrimental to public safety and welfare existed. The Board, therefore, held that the notice of the attempt to reclassify was sufficient to meet the constitutional need of notice, as well as that required by Sec. 500.5 for granting the special exception. It stated, however, that it would not make a similar ruling if the situation were in reverse, namely, had the notice been for a special exception and a reclassification granted.

Judge Raine held likewise, and pointed out, from a practical point of view, that everybody properly before his court had ample and adequate notice of what the Board was to consider, calling attention to the fact that the hearings before the Board extended over many months.

We agree. We think the notice in this case was, at least, a substantial compliance with the requirements of all of the Zoning Regulations and those enumerated by Professor Merrill, *supra.* We can see no logical reason for, or salutary purpose to be served by, holding that upon a hearing of a petition for a reclassification of property, after proper notice, the Commissioner is limited to either a granting or denial of the reclassification. The notice in this case notified the public that the petitioner was seeking a reclassification of its property to the lowest, *i.e.,* the least restricted, category of zoning in Baltimore County. This certainly apprised the public "clearly of the character of the action proposed and enough of the basis upon which it rest(ed) to enable" them to "intelligently prepare for the hearing." Anyone who attended

the hearing prepared to defeat the above request would like-wise have been prepared to defeat the grant of a special exception, as pointed out by Judge Raine and the Board. As the matter is not before us, we express no opinion on the statement of the Board that had the petition been for a special exception and a reclassification granted, its decision would have been different.

We are fortified in this conclusion by the closeness with which petitions for reclassification and special exceptions are dealt with in the Zoning Regulations; that the method of notice required for each is identical; that it is the recognized practice in Baltimore County and conceded in this case that a petition for each may be filed at the same time and a joint hearing held thereon; and in *Tyrie v. Baltimore County,* 215 Md. 135, 137 A. 2d 156, we held that where a petition for a reclassification was denied, the Commissioner could not entertain a petition for a special exception under Sec. 500.12 until eighteen months had expired. Moreover, had the Commissioner granted the petition for a reclassification and the protestants appealed to the Board, it is certain that under the provisions of Section 501.7,[2] the Board would have had the power to have granted the special exception; thus, we would have ended with the same result from the same notice.

The cases of *Smith v. F. W. Woolworth Co.,* 111 A. 2d 552 (Conn.), and *Kane v. Board of Appeals,* 173 N. E. 1 (Mass.), cited and relied upon by the appellants, did not pass upon the question here presented. In the *Smith* case, the notice stated that a hearing would be held on an appeal from a decision denying the petitioner a "permit for the construction of an addition" to its present building, when, in fact, the hearing was on a petition to grant a variance which, as granted, materially affected the protestant's rights. In the *Kane* case, the petition was that the board vary the application of the ordinance in order that the landowner might erect a gasoline fill-

---

2. This section provides: "The decision and order of the Board * * * may affirm or reverse in whole, or in part, any decision or order of the Zoning Commissioner, or may modify the Order appealed from and direct the issuance of a permit for such modified use as it may deem proper * * *."

ing station on his lot, property zoned for residential purposes. The notice declared that the petitioner was "asking for a variance" of the ordinance, not a variance of its application, and that the request of the petition was for such "variance * * * as applied to the erection or alterations in a proposed building." It was held that the notice was defective: that from it, alone, one could not determine with reasonable certainty whether the petition was to the end that a new building be permitted to be erected or an old one altered; and it contained no intimation of the use which the building, new or altered, was to be put.

Since the appellants contest the jurisdiction of the Commissioner or the Board to grant the special exception, we shall examine the regulations to see if they exceeded their authority. At this time, we will limit our consideration to the question as to whether the regulations permit the granting of a special exception for a "steam generating plant and related facilities" to a public utility in a R.6 Zone, Residence, One and Two Families, under any circumstances. Section 502 authorizes the Commissioner, subject to an appeal to the Board, to grant permission for "uses (of land) listed as Special Exceptions." Section 209.3 permits the granting of special exceptions in R.6 zones for "public utility uses other than those noted in section 200.11." (The public utility services listed in 200.11 are such as telephone and telegraph lines, electric light and power lines, which are permitted in residential zones without special exceptions.) Thus it is seen that the plain, comprehensive and express language of the regulations permits the issuance of special exceptions in R.6 Zones for "public utility uses" (other than those already permitted without a special exception). The language is broad and no limitations are placed thereon. It cannot seriously be argued that "a steam electric generating plant and related facilities" operated by a public utility company for the benefit of the public are not "public utility uses." If a steam generating plant is to be excluded from the phrase "public utility uses," what other uses are also to be excluded and what are to be considered as included, without clarifying language to guide us? We think it clear that the regulations, in express

terms, authorize a special exception to public utility companies in R.6 zones for the operation of steam generating plants and related facilities. Cf. *Dunham v. Zoning Board,* 26 A. 2d 614 (R. I.), a case in which a public utility plant was permitted in a residential zone by way of a special exception.

Section 256 lists the uses permitted in a Manufacturing Heavy zone. Section 256.1 says that uses permitted in Manufacturing or Restricted zones by Sec. 250.6 and Manufacturing Light zones by Sec. 253.4 are permitted in Manufacturing Heavy zones. Both Sec. 250.6 and Sec. 253.4 list "public utility uses" as permitted. The fact that the regulations thus specifically include "public utility uses" as permissible in Manufacturing Heavy zones, shows clear legislative intent that by "steam power plants" (which Sec. 256.2 allows in a Manufacturing Heavy zone at least 300 feet from any residence, or 200 feet from any business zone) is meant such plants other than those of a public utility. The inclusion of both "public utility uses" and "steam power plants" as permissible in a Manufacturing Heavy zone negates any possible inference that might otherwise arise that the phrase "public utility uses," whenever used in the regulations, was intended to mean such uses other than steam power plants.

## II

Section 502.1 provides that before any special exception shall be granted it must be made to appear that the use for which the special exception is requested will not be detrimental to the locality involved in certain specifically enumerated ways. Section 411 provides that for public utility uses permitted only by special exceptions in addition to the provision of section 502 (including 502.1 above) other regulations shall apply; and section 411.1 states that "the use must be needed for the proper rendition of the public utility's service and the location thereof shall not seriously impair the use of neighboring property."

The appellants state their second point in this fashion:

> "Even a cursory reading of the decision of the Board of Appeals and the Circuit Court will reveal

that they felt that the only tests that the petitioner had to meet were those set forth in Section 502.1 of the regulations. Yet Section 411 says:

'For public utility uses permitted only by Special Exceptions in addition to the provisions of Section 502, the following regulations shall apply:

'411.1—The use must be needed for the proper rendition of the public utility's service *and* the location thereof shall *not seriously impair* the *use* of neighboring property.' (Emphasis added.)

"The record shows that the utility offered *no* evidence on this point beyond the specific questions referred to in Section 502.1; it will also show that efforts on the part of the Protestants to show impairment of use and value were discouraged and disregarded by the Board and Court."

The easiest and most direct manner of answering the contention is by simply quoting from the Board's opinion wherein this specific question was considered and decided:

"A tremendous amount of technical and other expert testimony has been produced by the Petitioner, which has used its considerable resources to prove with great precision that the use is needed for the proper rendition of its services.

"Mr. Penniman, its Vice President in charge of Electric Power, testified with great clarity and at great length as to this present need for expansion, based on scientifically computed projections of future need. He stated that the estimated 1961 load will be over 1,250,000 kilowatts and that present peak capacity is now 1,108,800 kilowatts. He further explained that maintenance and overhaul make it impossible to operate at the theoretical capacity.

"The Protestants, understandably, were unable to produce any evidence to contravert the general question of need, so we must find that the requested use is, in fact, needed within the meaning of the first part of Section 411.1 of the Regulations.

"While the Protestants impliedly admit the need, they strenuously maintain, and attempt to show both by cross examination and direct testimony, that the need can be adequately met in a more appropriate location; further, that the last part of Section 411.1, which provides that the location of the public utility use shall not seriously impair the use of neighboring property, prohibits the installation at this location.

"The Petitioner's testimony, mostly by Mr. Penniman and Dr. Christie, indicates that nearly four years were spent searching for the best site to meet its purposes. Several locations, including Bush River, Back River, and Garrett Island in the Susquehanna River, were studied and compared with the Carroll Island site. The choice narrowed to Garrett Island v. Carroll Island, Bush River having been eliminated because of inadequate water circulation and Back River because the effect of pollution on the condensing equipment would cause tubes to blow and make operations prohibitively expensive.

\* \* \*

"A careful inspection of voluminous notes taken during the extended hearings plus verifications and augmentation by spot inspections of the record, indicates to us that the proposed use will not seriously impair the use of neighboring property, nor will it be detrimental to the health, safety, or general welfare of the locality involved, nor will it tend to create congestion in roads, streets or alleys therein, nor will it cause any other conditions which the application of Section 502.1 of the Regulations would prohibit."

It is thus seen that this contention is without merit: the Board, directly and specifically, dealt with the subject that the appellants claim that it did not, and there was substantial evidence upon which the Board based its findings.

The appellants also claim that the Board failed to apply sections 411.2 and 411.3. It will be noted that these sections

apply to the Metropolitan District of Baltimore County. The property involved herein is located outside of said Metropolitan District; consequently, these sections have no applicability.

### III

The appellants urge as their last assignment of error that "the appellee did not fulfill the burden imposed upon it by law." Under this heading, they seem to rely principally upon what they claim to have been "favored" treatment of public utilities; that Section 411.1 requires that the "use (of the land) must be needed" which they argue means the use of this *particular* piece of land must be needed; and the test that the use of the property will not seriously injure the use of neighboring properties for residential purposes should have been resolved in their favor. Most of this was considered and answered in II.

While much may be said concerning the difference between restrictions upon private undertakings and those which are clothed with a public interest and must have access to the centers of population in order to properly perform their public functions, we find it unnecessary to consider the matter in this case. The Board did not base its holdings upon any preferential treatment to be accorded to public utilities; and we think the evidence produced by the Gas and Electric Company was ample to justify the granting of the special exception without resort being had to any principle of preferred treatment for the public utility. In fact, a careful reading of the record discloses a rather strong case in favor of the reclassification requested.

The appellants do not question the general need of the Gas and Electric Company to add to its generating capacity, but insist that the use of this particular piece of land must be "needed." This contention that the requirement in Section 411.1 that the use of the land must be needed means that an individual piece of property must be needed to the exclusion of all others is untenable. If this were sound and there were two or more pieces of property available for the use needed, none could receive a special exception merely because the others were available, which would mean that the use, al-

though in fact needed, could not be effectuated. The record is replete with testimony that not only does the Company require additional generating facilities, but such a station is needed at this site. The testimony of Mr. Penniman and Dr. Christie detailed the unique advantages of this particular location for supplying the load in the adjacent area, and explained the critical deficiencies in topography, water supply and efficiency, not to mention the burden upon all rate-payers (in one case over $40,000,000 of additional expense) of the other sites considered.

We shall not unduly prolong this opinion by reviewing any great amount of the testimony to demonstrate that the Board had substantial evidence before it in making its determination that the use permitted by the special exception would not seriously impair the use of neighboring properties for residential purposes, particularly under the conditions and restrictions actually imposed by the Board. We pointed out under II that much time was consumed and thorough preparations made in selecting the site. We have also intimated above that the testimony makes out a rather strong case even to have granted the reclassification. Mr. Penniman, a man with 47 years of experience in the construction of generating plants, testified that the new plant would satisfy each of the six standards of Section 502.1, and, in addition, there would be no dust, no traffic hazards and little increase in traffic, no noise, no fly-ash, no water pollution, no smoke, no odor and no danger to the public using water near the plant. Dr. Christie testified generally to the same effect. J. Walter Jones, a real estate appraiser and developer, testified, after visiting the proposed plant site and after observing the operation and appearance of the comparable Wagner plant and the neighboring residential properties a few hundred feet away, that in his opinion the construction of the proposed plant would have no adverse effect on residential properties in the area. Mr. Gavrelis, the Deputy Director of Planning and Zoning of Baltimore County, testified his office approved the use of the site for a generating station and recommended that the necessary zoning be granted. In addition to the above, there was much more evidence upon the immediate subject under

consideration before the Board; but what has been stated seems enough to show that there was sufficient and substantial evidence adduced upon the issue so as to render the decision of the Board thereon fairly debatable. When this occurs, the action of the Board must be affirmed. *Missouri Realty Inc. v. Ramer,* 216 Md. 442, 140 A. 2d 655.

*Decree affirmed, with costs.*