566 A.2d 792

**LANDOVER BOOKS, INC.**

v.

**PRINCE GEORGE'S COUNTY, Maryland.**

**No. 498, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Dec. 6, 1989.

Leonard L. Lucchi (Wolman & Lucchi on the brief), Upper Marlboro, for appellant.

Joyce Birkel Hope, Upper Marlboro, for appellee.

Argued before ROSALYN B. BELL, WENNER and FISCHER, JJ.

ROSALYN B. BELL, Judge.

Landover Books, Inc. (Landover), appellant, the operator of an adult bookstore located in Lanham, Maryland, appeals from an order of the Circuit Court for Prince George's County, ordering Landover to cease further business activity. Landover contends that the adult bookstore zoning regulations requiring them to close are unconstitutional.

The issues raised in this appeal are:

— Whether proper notice of a zoning violation was provided to Landover.

- Whether documents and affidavits, not part of the Board of Zoning Appeals' record, were properly considered by the trial court.

- Whether the trial court had jurisdiction to issue an injunction without first giving Landover an opportunity to be heard.

- Whether the Prince George's County zoning ordinance, as it applies to Landover, constitutes an unconstitutional prior restraint.

We affirm the trial court and explain, after first setting forth the pertinent facts. We begin with the legislative history of the subject regulations. We will then deal with the procedural issues and deal last with the constitutional issue.

## THE ZONING LEGISLATION

In November of 1975, the Prince George's County Council, sitting as a District Council,[1] approved a zoning bill governing adult bookstores. Council Bill 156–1975, enacted November 18, 1975, set forth locational and operational requirements which, *inter alia,* limited the location of adult bookstores to specified commercial zones, prohibited adult bookstores from locating within 1,000 feet of any school building or 500 feet from any church, and required the adult bookstores to obtain a special exception permit in order to operate.

An adult bookstore is defined in § 1 of the 1975 bill as:
"Any commercial establishment that has twenty-five percent (25%) or more of its stock in books, periodicals, photographs, drawings, sculpture, motion pictures, films or other visual representations which depict sadomasochistic abuse, sexual conduct or sexual excitement as defined by Article 27 Section 416A of the Annotated Code

---

1. Pursuant to Md.Code Ann. Art. 28, § 8–101 (1957, 1986 Repl.Vol.), zoning ordinances in Prince George's County are enacted by the County Council, sitting as the District Council.

of Maryland and does not otherwise qualify as a theatre or nonprofit free lending library."

The bill further provided at § 6 that, "[i]n order to prevent the impairment of, or detriment to, neighboring properties, including existing or potential land uses in the neighborhood and in order to protect children who may be attracted to such establishments," adult bookstores were required to blacken or otherwise obstruct windows, doors and other apertures so as to prevent the viewing of the interior of the establishment from without, to limit advertising or outdoor displays to one business sign, and to prohibit access to any person under the age of 18 years.

In April of 1976, the locational restrictions were amended in Council Bill 10–1976 to increase from 500 feet to 1,000 feet the distance an adult bookstore must be placed from a church or similar place of worship.

The zoning ordinance was amended again in 1980 by Council Bill 116–1980. Section 1 of the amendment redefined adult bookstores by reducing from 25 percent to 5 percent the percentage of material depicting sadomasochistic abuse, sexual conduct or sexual excitement which a store could carry to avoid classification as an adult bookstore. The amendment also added an amortization provision which allowed all nonconforming bookstores to continue in operation until July 1, 1985. After that date, an adult bookstore could only continue in operation if it obtained a special exception, a process which will be discussed later.[2]

---

**2.** Since the enactment of Council Bill 116–1980, the zoning ordinance was repealed and reenacted in recodified form by Council Bill 120–1984. The current version of the adult bookstore provisions at issue in this case are located in Subtitle 27 of the Prince George's County Code and read as follows:

*"Section 27–107.1(a)(6)*
\* \* \* \*

Adult Book Store: Any commercial establishment, which does not otherwise qualify as a theater or nonprofit free-lending library, that either:

"(A) Has five percent (5%) or more of its stock on the premises, or has five percent (5%) or more of its stock on display, in books,

periodicals, photographs, drawings, sculpture, motion pictures, films, or other visual representations which depict sadomasochistic abuse, sexual conduct, or sexual excitement, as defined by Article 27, Section 416A of the Annotated Code of Maryland; or

"(B) Has on the premises one (1) or more mechanical devices for viewing such materials."

"*Section 27–248*

"(a) In order for a certified nonconforming adult book store to continue, the requirements of this Section shall be met (in addition to any other applicable requirements of this Division).

"(b) The purposes of this Section are:

"(1) To protect children, who may be attracted to these establishments; and

"(2) To prevent or control detrimental effects upon neighboring properties, and existing and proposed land uses in the general area.

"(c) All certified nonconforming adult book stores shall meet the following requirements:

"(1) All windows, doors, and other apertures shall be blackened or obstructed so as to prevent anyone outside the establishment from viewing its interior;

"(2) Advertising shall be limited to one (1) business sign, as provided for in Section 27–615;

"(3) The proprietor, owner, or personnel of the establishment shall prohibit access to the premises by any person who is under eighteen (18) years old.

"(d) In order to provide for a reasonable standard of amortization and to prevent an unreasonable loss, all certified nonconforming adult book stores may continue in operation until July 1, 1985, in accordance with the provisions of this Subtitle. On or after that date, an adult book store may only continue in operation if a Special Exception for an adult book store is approved in accordance with Part 4 of this Subtitle."

"*Section 27–317*

"(a) A Special Exception may be approved if:

"(1) The proposed use and site plan are in harmony with the purpose of this Subtitle;

"(2) The proposed use is in conformance with all the applicable requirements and regulations of this Subtitle;

"(3) The proposed use will not substantially impair the integrity of any validly approved Master Plan or Functional Master Plan, or, in the absence of a Master Plan or Functional Master Plan, the General Plan;

"(4) The proposed use will not adversely affect the health, safety, or welfare of residents or workers in the area; and

"(5) The proposed use will not be detrimental to the use or development of adjacent properties or the general neighborhood."

"*Section 27–331*

"(a) An adult book store may be permitted, subject to the following:

"(1) The subject structure shall be located at least one thousand (1,000) feet from any Residential Zone, land proposed to be used for residential purposes on an approved Basic Plan for a Comprehen-

## LANDOVER

Landover operates an adult bookstore at 7411 Annapolis Road in Lanham, Maryland. In April of 1981, Landover was granted a Use and Occupancy Permit to operate an adult bookstore as a nonconforming use. As a result of the changes in the zoning ordinance, an advisory letter explaining the provisions of Council Bill 116–1980 was hand delivered to Landover's place of business on June 14, 1985. The letter was accepted by an employee of Landover. The letter instructed Landover that, if it intended to continue to operate an adult bookstore, it must apply for a special exception by July 1, 1985. On July 2, 1985, an inspection of Landover's premises revealed the continued operation of an adult bookstore without a special exception permit. Subsequently, a zoning violation notice was sent to Robert G. Carr, Landover's resident agent, by certified mail, return receipt requested, requiring Landover to cease operations as an adult bookstore by August 15, 1985 or obtain a special exception. A signed receipt was received by the Department of Environmental Resources, but apparently someone other than Carr signed for it, an issue to be discussed later.

Landover filed a notice of appeal from the zoning violation notice to the Board of Zoning Appeals for Prince George's County (Board) on August 15, 1985. A hearing was scheduled and when Landover failed to appear, the Board dismissed the case. Landover's petition for a new hearing date was denied by the Board. Landover appealed the denial of the petition to the Circuit Court for Prince

---

 sive Design Zone, approved Official Plan for an R–P–C Zone, or any approved Conceptual or Detailed Site Plan, or property associated with any of the following: school, library, park, playground, recreational facility, church, convent, or monastery.

"(2) As a part of the Special Exception approval, the Council may restrict advertisement, outdoor display, and the location of merchandise, and may impose other reasonable requirements deemed necessary to safeguard the health, safety, morals, and general welfare of the community.

"(3) The proprietor, owner, or personnel of the establishment shall prohibit access to the premises by any person who is under eighteen (18) years old."

George's County which remanded the case to the Board for a hearing.

On February 25, 1987, the Board conducted a hearing on the appeal of the zoning violation notice. The Board issued a decision on March 12, 1987, denying Landover's appeal of the violation and its request for extension of the grace period for filing for a special exception. The Board's decision was appealed by Landover to the Circuit Court for Prince George's County.

Prior to the hearing of the appeal, Prince George's County (County), appellee, filed additional evidence consisting of affidavits and documents supporting the 1975, 1976 and 1980 aforementioned Council Bills. Landover filed a motion to strike the documents but it was denied on March 3, 1988, the same day oral arguments were heard on the merits of the appeal. On March 23, 1988, the trial court affirmed the Board's decision and enjoined Landover from conducting its business unless a special exception application was filed by April 5, 1988. It is from this decision that Landover appeals. We must first determine whether Landover has exhausted its administrative remedies.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

At first glance, it would appear that Landover did not exhaust its prescribed administrative remedies since it did not apply for a special exception and have its application rejected. Ordinarily, where a remedy is provided, a litigant must adopt that form and must not bypass an administrative body by pursuing other remedies. *Prince George's County v. Blumberg*, 288 Md. 275, 284, 418 A.2d 1155 (1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981). Here, Landover sought to bypass the special exception application process by attacking the constitutionality of the ordinance instead of applying for a special exception. Under *Blumberg*, a constitutional attack upon the validity of a general statutory enactment as a whole, as contrasted with the ordinance's application to a particular situation, falls within an exception to the administrative

agency exhaustion rule. *Blumberg,* 288 Md. at 284–85, 418 A.2d 1155. The circumstances in the instant case fit this exception.

 Here, Landover attacked the ordinance as vague and an unlawful delegation because it provided no definite standards for the Council in issuing special exceptions. One who is subjected to a licensing statute which allegedly vests unbridled discretion in a government official over whether to permit or deny an activity which falls within the scope of First Amendment protection, may challenge the ordinance facially without the necessity of first applying for and being denied a license, or as in this case, a special exception. *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988). *See also Schneider v. Pullen,* 198 Md. 64, 69, 81 A.2d 226 (1951). Accordingly, Landover's failure to apply for a special exception does not preclude it from attacking the ordinance as unconstitutional.

## NOTICE

Landover contends that service was not made in accordance with the zoning ordinance; hence, service was not proper. Section 27–264(b)(1) of the Prince George's Zoning Ordinance provides:

> "When it determines that a violation of this Subtitle has occurred with respect to the use of any building, structure, or land, or there is a failure to obtain a use and occupancy permit, the Department shall serve a notice (on the form provided) upon the owner, general agent, or lessee of the building, structure, or land, directing that the violation stop."

The record reveals that a zoning violation was sent to Landover's place of business by certified mail addressed to Robert G. Carr, Landover's resident agent. A signed receipt of the notice was received by the Department of Environmental Resources. The receipt, however, was signed by someone other than Carr, presumably an employ-

ee of Landover. Landover argues that, since Carr was not served with the violation, service was not in accordance with the ordinance. Landover raises the question of a technical irregularity regarding the adequacy of the notice. We find that Landover's allegation is without merit.

■ Ordinarily, the failure of an administrative board to give statutorily prescribed notice of a hearing is fatal to the jurisdiction of the board. *Cassidy v. Baltimore County Bd. of Appeals,* 218 Md. 418, 421–22, 146 A.2d 896 (1958). Where, however, the complaining litigant had knowledge of the facts, "the requirement of notification purposed to inform may be satisfied by actual knowledge, especially when it is acted upon." *McLay v. Maryland Assemblies, Inc.,* 269 Md. 465, 477, 306 A.2d 524 (1973) (citation omitted) (no showing of prejudice regarding statutory notice requirements where parties appeared at and participated in zoning board hearing). *See also Clark v. Wolman,* 243 Md. 597, 600, 221 A.2d 687 (1966) (where public notice given and parties attended zoning hearing, failure to receive written notice did not invalidate city's action); *Cassidy,* 218 Md. at 422 n. 1, 146 A.2d 896 (lack of constructive notice, in accordance with technical statutory requirements, is waived by a party's appearance and participation in zoning hearing); *Largo Civic Assoc. v. Prince George's County,* 21 Md.App. 76, 86, 318 A.2d 834 (1974) (parties' appearance at and participation in zoning classification hearing constituted actual notice where parties alleged posted signs failed to inform public of proposed zoning classification).

■ In the instant case, the purpose of the notice was to inform Landover of the violation with directions that it obtain a special exception by August 15, 1985. On August 15, 1985, Landover filed a notice of appeal regarding the zoning violation and later appeared and participated in the hearing on the appeal, thus indicating that it knew the contents of the notice. Moreover, there can be no showing of prejudice since Landover did attend the hearing. Under the circumstances presented, we hold that service was in

compliance with the substantive requirements of the ordinance despite the technical irregularity since Landover had actual knowledge of the violation within the meaning of *McLay*.

## ADDITIONAL EVIDENCE

Landover also takes issue with the introduction of new evidence by the County following Landover's appeal from an adverse decision by the Board. Before we address this question, we must first discuss how this issue arose.

At the conclusion of the examination of witnesses and the presentation of evidence at the hearing before the Board, both parties were allowed to make final comments. Landover stated, "I will not need a summary if I can just make a statement on the record." Landover briefly restated its position regarding the special exception and notice issue and then alleged for the first time that the ordinance was unconstitutional because it violated the First Amendment and its due process rights. Landover, in effect, acknowledged that the Board did not have power to rule on the issue when it prefaced its constitutional argument by the statement:

"We're not here before either the Circuit Court or the Appeals Courts of Maryland or any Federal Courts, but it's definitely a contention of our client the the [sic] Ordinance upon which this violation is based in [sic] unconstitutional."

The County followed with its summary, reiterating its position that Landover was an adult bookstore and must apply for a special exception. In response to Landover's constitutional allegation, the County averred that Landover had no standing to argue the constitutionality of the ordinance and furthermore, had not provided any evidence to prove that the ordinance was unconstitutional, but simply provided legal argument.

Following the hearing, the Board issued a decision denying Landover's appeal from the zoning violation and the

request for an extension of time to file an application for a special exception. In discussing the constitutional issue raised by Landover, the Board acknowledged that it was "not a duly authorized court of law empowered to rule definitively upon issues of statutory constitutionality."

Landover appealed the Board's decision to the Circuit Court for Prince George's County and both parties subsequently filed memoranda. Attached to the County's memorandum were 136 pages of documents supporting its constitutional argument. These documents were not presented at the hearing before the Board and thus were not a part of the administrative record. The documents consisted primarily of the administrative bill files for the 1975 zoning ordinance and its subsequent amendments.[3]

Landover subsequently filed a motion to strike the documents submitted by the County. On January 21, 1988, a hearing was held on the motion to strike and on March 3, 1988 the motion was denied.

Landover contends that, since the issue of constitutionality was argued by both parties before the board, there is no reason why the County could not have submitted the documents into the record at the hearing. The County explained that the reason this evidence was not submitted to the Board was because the Board "was without jurisdiction to consider the constitutionality of the statute."

In denying the motion to strike, the judge reasoned: "Otherwise the County is put in the position of not having an issue resolved by the Board, and then later not being able to have the Court resolve it because the Board did not consider it."

---

3. Included in these documents were two affidavits, one from Barry S. Cramp, the County's chief zoning hearing examiner, explaining how the special exception process operates and one from Dale C. Hutchison, chief of the zoning division of the Maryland–National Capital Park and Planning Commission, explaining how the law of Maryland relating to special exceptions applies in Prince George's County.

On appeal, Landover argues that Rule B10 only permits additional evidence to be received by a circuit court reviewing an administrative appeal where it is permitted by law. Since the statutory provisions providing for the right of appeal from a decision of an administrative agency do not provide for the receipt of additional evidence on appeal, Landover concludes that the court erred in denying its motion to strike the evidence.[4]

■ The Board of Zoning Appeals for Prince George's County was without authority to evaluate the constitutional question. Hence, the trial judge correctly reasoned that good cause existed for the omission of the subject documents since the Board could not consider the issue for which the evidence was presented. In the instant case, since a board of zoning appeals is not a judicial body, it may not rule on the constitutionality of the ordinance under which it is authorized to act. 101A C.J.S. *Zoning & Land Planning* § 184 (1979). Thus, assuming the trial judge found the proffered evidence material, a remand to the Board to consider the additional evidence would have been futile. *See Howard County v. Davidsonville Area Civic & Potomac River As-*

---

**4.** The relevant statutes Landover relies upon are Md.Code Ann. Art. 25A, § 5(U) (1957, 1987 Repl.Vol.), and Art. 28, § 8–111.1(a) (1957, 1986 Repl.Vol., 1989 Cum.Supp.). Art. 25A, § 5(U) provides in pertinent part:

"Any person aggrieved by the decision of the board and a party to the proceeding before it may appeal to the circuit court for the county which shall have power to affirm the decision of the board, or if such decision is not in accordance with law, to modify or reverse such decision, with or without remanding the case for rehearing as justice may require. Any party to the proceeding in the circuit court aggrieved by the decision of the said court may appeal from such decision to the Court of Special Appeals. The review proceedings provided by this subsection shall be exclusive."

Art. 28, § 8–111.1(a)(1) provides:

"Any person aggrieved by the decision of the board of zoning appeals of Prince George's County and a party to the proceeding before it may appeal to the circuit court for the county which shall have power to affirm the decision of the board, or if the decision is not in accordance with law, to modify or reverse the decision, with or without remanding the case for rehearing as justice may require."

*soc. Inc.,* 72 Md.App. 19, 48, 527 A.2d 772, *cert. denied,* 311 Md. 286, 533 A.2d 1308 (1987) (remand to agency, while generally appropriate, is not necessary if it would be futile).

Accordingly, we hold that the trial judge properly admitted the evidence to support the County's claim that the ordinance was constitutional.

## INJUNCTION

In his March 23, 1988 order affirming the Board's decision, the trial judge also ordered Landover to "cease and desist further business activity ... until such time as a special exception application has been filed...." To permit time for Landover to file an application, the order was to take effect on April 5, 1988. Landover concedes that the trial judge was permitted to grant an injunction on his own motion under Rule BB77,[5] but he failed to comply first with Rule BB74.

Rule BB74 provides:

"Except as provided in Rule BB72 (*Ex Parte* Injunction), an injunction shall not be issued unless the adverse party shall have had prior notice and an opportunity to be heard upon the propriety of such injunction."

At the hearing, Landover's counsel requested a hearing if the trial judge decided to grant an injunction. At the conclusion of the proceedings, the trial judge stated:

"Let me say I would—I know what I'm going to do, but I would be inclined, if I'm inclined to hold the Board of Appeals—I would be inclined to issue a rule to show

---

**5.** Rule BB77 provides:

"Although an injunction may not have been demanded, pursuant to Rule 2–305, the court may at any stage of an action, on application of any party thereto, or party in interest, by petition, or of its own motion, grant an injunction, subject to the provisions of this Subtitle, and upon such other terms and conditions as justice may require."

cause why the operation should not be closed down fully, and give you the opportunity to respond to that. And if I thought the special exception was timely filed, I would give you fifteen days.

"If it was not timely filed, then I would end up mandating the place be closed. If it was filed, it could stay open pending the normal routine."

No hearing on the propriety of the injunction was ever scheduled. Thus, Landover argues that the trial court erred in issuing an injunction without first giving it prior notice and an opportunity to be heard.

We perceive no error in the trial judge's ruling. There was a full hearing on the merits of Landover's appeal from the Board. The trial judge found the ordinance constitutional and affirmed the Board's decision upholding the zoning violation. The injunction was merely part of the final order.

Landover places much emphasis on the fact that the trial judge stated that he was inclined to give Landover a hearing to show cause why its operation should not be closed down. Although the trial judge may have opted to grant the hearing if he believed additional information was required, it was not necessary here. It was already established at the hearing on the merits that Landover was in violation of the zoning ordinance which resulted from its failure to apply for a special exception. On appeal, Landover does not suggest nor do we know what an additional hearing would have accomplished. Injunctive relief is an appropriate remedy to compel compliance with an ordinance. *See Shannahan v. Ringgold,* 212 Md. 481, 490, 129 A.2d 797 (1957). That is precisely what the trial judge ordered.

## CONSTITUTIONALITY

Landover's primary contention is that the Prince George's County zoning ordinance, as it applies to adult bookstores, violates its First Amendment rights. As grounds for this

contention, Landover alleges that 1) the ordinance is not a content neutral time, place and manner regulation and 2) the special exception criteria is vague and overbroad. The resolution of Landover's challenge to the subject zoning ordinance on the ground that it violates a First Amendment right is largely controlled by the United States Supreme Court's decisions in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), and *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310, *reh'g denied*, 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976).[6] *See 5297 Pulaski Highway, Inc. v. Town of Perryville*, 69 Md.App. 590, 594, 519 A.2d 206 (1987).

In *Renton*, the Supreme Court upheld as constitutional a local ordinance which prohibited adult theatres from locating within 1,000 feet of any residential zone, single or multiple family dwelling, church, park or school. In so holding, the Court relied substantially on *American Mini Theatres*. In writing for the majority, Justice (now Chief Justice) Rehnquist stated, citing *American Mini Theatres*, that, since the ordinance did not ban adult theatres altogether but simply regulated their location, it was a valid time, place, and manner regulation. The Court concluded the ordinance was content neutral since the ordinance was not directed at the content of the films shown at the adult theatres, but rather at the "secondary effects" of such theatres on the surrounding community. *Renton*, 475 U.S. at 47, 106 S.Ct. at 928.

Similarly, in *American Mini Theatres*, the Court upheld as constitutional an ordinance which prohibited adult theatres from locating within 1,000 feet of any two other regulated uses or within 500 feet of any residential area. The Court held that the location restrictions were valid content neutral time, place and manner restrictions since the purpose for the ordinance was not to suppress or

---

**6.** In their brief, Landover neither contests or distinguishes *Renton* or *American Mini Theatres.*

eliminate the speech itself, but to prevent urban blight and crime. The city's interest in avoiding these secondary effects is one, the Court stated, that "must be accorded high respect." *American Mini Theatres*, 427 U.S. at 71, 96 S.Ct. at 2452.

—Time, Place and Manner Restriction—

■ Under *Renton* and *American Mini Theatres*, we conclude that the zoning ordinance in the instant case is properly analyzed as a time, place and manner restriction since the challenged ordinance, like that in *Renton* and *American Mini Theatres*, does not ban adult bookstores altogether. Instead, it prohibits adult bookstores from locating within 1,000 feet of any residential zone, school, library, park, playground, recreational facility or church. Thus, the dissemination of the adult bookstore's inventory at other locations is not restricted. So long as the protected materials continue to be fully available and public access to them is not substantially impaired, time, place and manner regulations do not offend the First Amendment. *Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821, 827 (4th Cir.1979), citing *American Mini Theatres*, 427 U.S. at 76–78, 96 S.Ct. at 2455–2456.

—Content Neutral—

Moreover, the ordinance is content-neutral. Content neutral speech regulations are those that " 'are *justified* without reference to the content of the regulated speech.' " *Renton*, 475 U.S. at 48, 106 S.Ct. at 929 (emphasis in original), quoting *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976).

The ordinance in the instant case is content-neutral since the ordinance was not directed at the content of the material sold at adult bookstores, but rather at the secondary effects of the bookstores on the surrounding community. The concern of the District Council was aimed at the secondary effects that adult bookstores would have on the community, not suppressing speech embodied in the materi-

als displayed or sold at the place of business. The language of the subject zoning ordinance clearly indicates that the purpose of the ordinance is to prevent an adverse impact upon neighboring properties and children.[7]

Based upon the preceding discussion and its similarity to the ordinances in *Renton* and *American Mini Theatres,* we conclude that the Prince George's County zoning ordinance is a content-neutral time, place and manner regulation. This description does not, however, end the inquiry.

—Validity of a Content Neutral Time, Place and Manner Regulation—

With respect to businesses which disseminate sexually explicit materials, content-neutral time, place and manner restrictions directed at such businesses are acceptable only if they are "designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Renton,* 475 U.S. at 47, 106 S.Ct. at 928. Ordinances aimed at preserving the quality of life in the community at large reflect a substantial government interest. *Renton,* 475 U.S. at 54, 106 S.Ct. at 932. The County's interest in preventing an adverse impact on neighboring properties and children is a substantial government interest. This is especially significant since *Renton* and *American Mini Theatres* have made it clear that a city's interest in preserving the quality of urban life is entitled to high respect.

Landover argues, however, that the County zoning ordinance was enacted without the benefit of studies of the secondary effects of adult bookstores. In support of its contention, Landover relies on *11126 Baltimore Boulevard, Inc. v. Prince George's County,* 684 F.Supp. 884 (D.Md. 1988), *rev'd,* 886 F.2d 1415 (4th Cir.1989). In *11126 Baltimore Boulevard,* the United States District Court for the District of Maryland reviewed the same ordinance which is involved in the instant case and found the ordinance uncon-

---

**7.** *See* n. 2, § 27–248(b) therein.

stitutional since there was insufficient evidence in the record to support a finding that the regulated speech produced negative secondary effects. *11126 Baltimore Boulevard,* 684 F.Supp. at 895.

The District Court based this finding on the fact that the record contained no reference to any study conducted by the County or by other jurisdictions with regard to the adult bookstore issue. The District Court indicated that, although a number of citizens of the County submitted letters expressing their concerns, there was no indication that the County investigated these concerns or briefed the Council regarding problems generated by existing adult bookstores. The District Court was also concerned with the fact that the record did not suggest that the members of the Council relied upon any written information supplied to them or that they discussed the effect of similar efforts to regulate adult bookstores elsewhere. We are not persuaded.

In *Renton,* the Supreme Court pointed out that, in enacting an adult theatre zoning ordinance, the

> "First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses."

*Renton,* 475 U.S. at 51–52, 106 S.Ct. at 930–931.

The test set forth in *Renton* does not require specific data in the record. Instead, the test is whether the Council, when enacting the ordinance, had evidence which it reasonably believed was relevant to the problems the County sought to address. *Renton,* 475 U.S. at 51–52, 106 S.Ct. at 930–931. Here, the problems were deterioration of neighboring properties and the attraction of children to adult bookstores.

Evidence in the administrative bill files for the 1975 ordinance and its later amendments contain extensive correspondence from citizens and government officials express-

ing their concern on the negative effects that adult book-stores have or would have on children and neighboring properties. The record also included correspondence from civic organizations expressing the same concerns. In addition, a public hearing was held to require additional comments. A staff person, present at the hearing and who participated in the drafting of the 1975 ordinance and its later amendments, averred that a concern of the council members and staff at the hearing was to address the adverse impact of adult bookstores on neighboring properties and children.[8] We hold that this evidence supports a legitimate interest which the County reasonably believed relevant to the problem it sought to address.

In reversing the district court in *11126 Baltimore Boulevard*, the United States Court of Appeals for the Fourth Circuit also found sufficient evidence on secondary effects in the record. In so finding, it noted:

"[I]n enacting legislation of this sort, we find it reasonable for local legislative bodies to take notice or assume matters of common knowledge and experience. As countless cases addressed by this court and courts across the nation will confirm, there are notorious and self-evident conditions attendant to the commercial exploitation of human sexuality which do not vary greatly among generally comparable communities within even so heterogeneous a country as our own. Thus, we are inclined to review the reasonableness of Prince George's County zoning ordinances not solely on the basis of the legislative record before it, but of what it reasonably foresaw in the light of a sufficiently reported national experience copiously documented in the public record. It defies common sense to suppose that community leaders in Prince George's County were not aware of comparable conditions in other localities and of the varied responses being attempted by other governments to similar conditions. Consequently, we must assume that a proper factor in

---

8. Affidavit of Ruth Senes dated September 25, 1987 ¶¶ 5–6.

this local legislative determination of governmental interests was what was demonstratively deemed generally experienced in similarly situated communities."

*Prince George's County v. 11126 Baltimore Boulevard*, 886 F.2d 1415, 1423–1424 (4th Cir.1989) (footnote omitted) (citation omitted).

Similarly, in *Wall Distributors, Inc. v. City of Newport News*, 782 F.2d 1165, 1169–70 n. 7 (4th Cir.1986), the Court recognized the local legislative body's exercise of legislative notice and stated:

"To insist that governmental interests justifying such legislation could only be found in specific local experiences and conditions would be unrealistically to require deliberate subjection to those experiences and conditions before attempting to avoid them."

We find this reasoning persuasive as additional support that there was a reasonable basis for the County to believe that the ordinance would further its stated purposes.

Furthermore, statutes similar to the subject ordinance have been upheld on legislative records containing less evidence than that in the instant case. In *Hart Book Stores*, the North Carolina Legislature had little more than the results of an inspection conducted by a county health officer whose report was read by a sponsoring senator to a legislative committee. *Hart Book Stores*, 612 F.2d at 828–29 n. 9. Furthermore, in *Wall Distributors*, 782 F.2d at 1169 n. 6, the only evidence presented prior to the enactment of the regulation was an arrest record and one affidavit averring that illegal sexual activity occurred in video booths. Accordingly, we conclude that the County's reliance upon the record evidence before it was not unreasonable.

—Reasonable Alternatives—

In addition to requiring that content-neutral time, place and manner restrictions be designed to serve a substantial government interest, the restriction must also allow for

reasonable alternative avenues of communication. *Renton,* 475 U.S. at 47, 106 S.Ct. at 928.

In his affidavit, Dale C. Hutchison, Chief of the Zoning Division of the Maryland–National Capital Park and Planning Commission, estimated that there are approximately 20 commercial or industrial areas of the County with sufficient commercially or industrially zoned land within each area to meet the 1,000–foot distance requirement. Since there are only seven adult bookstores currently operating in the County, there are 13 available spots where adult bookstores could operate. Since Landover did not submit any evidence to contradict Hutchison's findings, we conclude that there are sufficient alternative sites available for the establishment of adult bookstores.

—Constitutional Claim Under Maryland's
Declaration of Rights—

Landover also argues that the County zoning ordinance is in conflict with Art. 40 of the Maryland Declaration of Rights which provides:

"That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege."

We find no merit in this argument.

The guaranty of freedom of speech under Art. 40 is substantially similar to that enunciated in the First Amendment and should not be interpreted differently. *Freedman v. State,* 233 Md. 498, 505, 197 A.2d 232 (1964), *rev'd on other grounds,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). Hence, we decline to do so.

—Special Exception Application—

The County zoning ordinance's special exception criteria in § 27–317 address whether a proposed use will be "in harmony with the purpose" of the zoning plan; "in conformance with all the applicable requirements and regulations"; "substantially impair the integrity" of the master

plan; "adversely affect the health, safety, or welfare" of the community; and will not be "detrimental" to the development of the general neighborhood.[9] Landover asserts that these criteria are impermissibly vague because they lack narrow, definite and objective standards and thus vest excessive discretion in the zoning officials. Landover challenges such excessive discretion as constituting an unconstitutional prior restraint. The County contends that the zoning officials have no discretion to deny a special exception application if each zoning requirement is supported by substantial evidence. We agree with Landover that the application procedure for a special exception is an unconstitutional prior restraint since it leaves an improper degree of discretion in the local zoning officials which exceeds the scope permitted in the First Amendment context and under Art. 40 of the Maryland Declaration of Rights. In addition, the criteria for granting a special exception are so vague that they violate the Due Process Clause of the Fourteenth Amendment. We explain.

▆▆▆ Ordinances which authorize public officials to subject First Amendment freedoms to a prior restraint of a license or special exception must set forth definite, objective and narrow standards to guide the administering officials. *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969). In *Shuttlesworth,* an ordinance authorizing public officials to deny a permit for a parade if they deemed the parade to be detrimental to the welfare, decency or morals of the community was held unconstitutional since it conferred unbridled power to the public officials to prohibit the parade.

---

9. *See* n. 2, *supra,* at § 27–317 for the full text of the special exception criteria. Section 27–317 sets forth the general requirements for all special exception applicants. Additional requirements specifically for adult bookstores regarding location, advertising and access are contained in § 27–331. Landover does not allege that § 27–331 is unconstitutionally vague, but rather, that it is an unconstitutional time, place and manner restriction.

In *11126 Baltimore Blvd., Inc.*, 684 F.Supp. at 899, the District Court found that the standards in § 27–317 as they apply to adult bookstores constituted an unconstitutional prior restraint. This is the same general statute governing special exceptions at issue here. The District Court reasoned that the "criteria are subject to possible manipulation and arbitrary application by officials who might object to the contents of the materials sold at adult bookstores." *11126 Baltimore Blvd., Inc.*, 684 F.Supp. at 899. The District Court further opined:

> "In essence, the County bookstore regulations leave the permit process 'open to the kind of arbitrary application that [the Supreme] Court has condemned as inherently inconsistent with a valid time, place and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.' " (Brackets in original.)

*11126 Baltimore Blvd., Inc.*, 684 F.Supp. at 899, quoting *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 649, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981).

The United States Court of Appeals for the Fourth Circuit reversed the District Court and held that the standards in § 27–317 do not confer unbridled discretion upon the zoning officials. *11126 Baltimore Blvd., Inc.*, 886 F.2d at 1427. As support for its holding, the Court of Appeals detailed the multi-tiered administrative review process of a special exception application. The Court noted that the review process includes public hearings where evidence is presented and the application may not be denied if it meets the criteria in § 27–317 and § 27–331 by substantial evidence and there is no substantial evidence to the contrary. We are not persuaded by the rationale employed by the Fourth Circuit since it ignores the fact that some of the standards used in the process are vague and thus permits arbitrary application by the zoning officials. We further explain.

In *5297 Pulaski Highway,* 69 Md.App. 590, 519 A.2d 206, we addressed the Perryville town ordinance requiring an adult bookstore to obtain a conditional use permit. The ordinance set forth 13 guidelines which the zoning board was required to follow when determining whether to grant the conditional use.[10]

We stated that the guidelines in the Perryville ordinance were "sufficient in number and definitiveness" to prevent the board from having unbridled discretion, particularly since the ordinance provided a time frame for hearings and disposition of zoning appeals. *5297 Pulaski Highway,* 69 Md.App. at 599–600, 519 A.2d 206. We further opined:

> "To deny an applicant a special exception, the zoning authority must find that the location would suffer unique problems 'above and beyond those' normally associated with the particular use irrespective of whether it is situated within the prescribed zone."

---

**10.** The 13 Perryville criteria are:

> "1. The nature of the proposed site, including its size and shape and the proposed size, shape, and arrangement of structures
> 2. Traffic conditions including the resulting traffic patterns
> 3. The nature of the surrounding area and the extent to which the proposed use might impair its present and future development
> 4. The proximity of dwellings, churches, schools, public structures, and other places of public gatherings
> 5. The probable effect of the proposed use upon the peaceful enjoyment of people in their homes
> 6. Facilities for sewers, water, schools, transportation, and other services, and the ability of the County to supply such services
> 7. The limitations of fire-fighting and rescue equipment, and the means of access for fire and police protection
> 8. The preservation of cultural and historic landmarks and trees
> 9. The probable effect of noise, vibration, smoke and particulate matter, toxic matter, odorous matter, fire and explosion hazards, or glare upon the uses of surrounding properties
> 10. The purpose and intent of this Ordinance as set forth in its other sections
> 11. The most appropriate use of land and structure
> 12. The conservation of property values
> 13. The contribution, if any, such proposed use, building or addition would make toward the deterioration of areas and neighborhoods."

*5297 Pulaski Highway,* 69 Md.App. at 597–98, 519 A.2d 206.

*5297 Pulaski Highway,* 69 Md.App. at 602, 519 A.2d 206. The subject criteria, unlike the Perryville guidelines, do not provide specific guidelines to enable the Board to evaluate the problems unique to adult bookstores.

Moreover, the Perryville guidelines apprised the applicant of the factors that would affect the zoning board's decision since some of the factors are capable of objective quantification and measurement and thus, meaningful judicial review.

In the instant case, § 27–331 requires that an adult bookstore must be located at least 1,000 feet away from any "Residential Zone" or any "school, library, park, playground, recreational facility, church, convent, or monastery." Section 27–331 also permits the Council to restrict outdoor displays, advertisements and access. The distance and access requirements are met by objective criteria. While the amount of advertising and displays are not identified, at least the applicant is apprised of the factors that embrace the licensing decision. Even though the requirements of § 27–331 are capable of objective specificity, § 27–331 must be read in *pari materia* with § 27–317.

The standards in § 27–317 afford the applicant only a vague idea whether the proposed use as an adult bookstore would be permissible since the factors are purely subjective evaluations which permit zoning officials unbridled discretion in granting special exceptions. Section 27–317, as written, undermines the objective requirements of § 27–331 and when construed together the two sections confer unlimited authority on County officials to deny any application for an adult bookstore, even if the applicants have met the locational requirements in § 27–331.

In contrast, the Perryville guidelines apprise the applicant of factors that will determine the permit decision. For example, an applicant must be concerned with the size and shape of its lot, traffic conditions, proximity to other dwellings, sewage and water, fire and police protection, historical preservation, noise and pollution levels, and property val-

ues. While these factors are not as specific as the distance requirement in § 27–331, they are "sufficient in number and definitiveness" to prevent the zoning officials from having unbridled discretion in comparison to §§ 27–317 and 27–331, when read together.

Where zoning regulations are directed at or impact on conduct protected by the First Amendment, a more stringent review regarding the validity of the statute is required than is applicable to regulations zoning conduct not protected under the First Amendment. *Stansberry v. Holmes*, 613 F.2d 1285, 1288 (5th Cir.1980), citing *American Mini Theatres*, 427 U.S. at 72–73, 96 S.Ct. at 2453–2454. Thus, a regulation affecting First Amendment protected conduct must embody standards sufficiently specific to avoid an attack based on vagueness.

A vagueness inquiry focuses on whether a law states its requirements in terms so vague that persons of reasonable intelligence " 'must necessarily guess at its meaning.' " *Broadrick v. Oklahoma*, 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973), quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Reading §§ 27–317 and 27–331 together, reasonable persons exercising reasonable intelligence could not determine whether a special exception may be permitted, but rather, could only venture into the realm of conjecture.

Moreover, the guaranty of due process requires that a statute must not be unreasonable, arbitrary or capricious. *Daniel Loughran Co. v. Lord Baltimore Candy & Tobacco Co.*, 178 Md. 38, 44, 12 A.2d 201 (1940). Here, § 27–317 vests unlimited discretion in the Board to open selectively zones for adult uses based upon arbitrary standards. Such a process permits the Board to single out and discriminate among adult uses on the basis of content.

Our research into our sister jurisdictions shows that other Courts have analyzed special permit procedures in a zoning context and have held similar standards in issuing special

permits or conditional uses unconstitutional. In *Fantasy Book Shop, Inc. v. City of Boston,* 652 F.2d 1115 (1st Cir.1981), the Court reviewed a zoning ordinance which required adult businesses to obtain a license by demonstrating that the legitimate protective interests of affected citizens would not be harmed. The Court held that this criteria was unconstitutional because the "standard comprises purely subjective evaluations of wholly unrestricted factors, and thus vests the denial of a license in the essentially unbridled discretion of a municipal administrator." *Fantasy Book Shop, Inc.,* 652 F.2d at 1123. In *15192 Thirteen Mile Road v. City of Warren,* 593 F.Supp. 147, 156 (E.D.Mich 1984), an ordinance permitted adult bookstores to locate in specific zones if special use approval was obtained. The grant of approval depended upon whether the use was injurious to the zoning district and surrounding areas and not contrary to the spirit and purpose of the ordinance. The District Court held that

> "indefinite general standards guiding the Commission and Board's discretion, raise the possibility that local officials could effectively prohibit any adult entertainment facility. For there to be an effective permit requirement, a municipality must provide narrowly drawn, objective, reasonable, and definite standards to guide the administering officials."

*15192 Thirteen Mile Road,* 593 F.Supp. at 156. In *Little v. City of Greenfield,* 575 F.Supp. 656 (E.D.Wis.1983), an ordinance required adult bookstores to obtain a special use permit. The issuance of the permit required a determination of whether the use was of the same general character as other businesses in the area, and compatible with adjoining properties and not contrary to general welfare. The Court held that the criteria were indefinite and so vague that they violated the Due Process Clause of the Fourteenth Amendment. *City of Greenfield,* 575 F.Supp. at 663. In *Amico v. New Castle County,* 571 F.Supp. 160 (D.Del.1983), a zoning ordinance granted the City Council the right to deny an application for a license to operate an adult enter-

tainment establishment if the proposed use would detrimentally affect the neighborhood. The Court held the statute unconstitutional since it granted the Council overly broad discretion, without any guidance, to determine what would detrimentally affect the neighborhood. *Amico,* 571 F.Supp. at 173. In *Evansville Book Mart, Inc. v. City of Indianapolis,* 477 F.Supp. 128, 132 (S.D.Ind.1979), the City denied a license to an adult theatre based upon the effect of the business on surrounding property and residents. The Court found the ordinance unconstitutional since it did not contain adequate guidelines and gave the licensing official unlimited discretion. *Evansville Book Mart,* 477 F.Supp. at 132. In *City of Imperial Beach v. Palm Avenue Books, Inc.,* 115 Cal.App.3d 134, 171 Cal.Rptr. 197 (1981), the granting of a conditional use permit to an adult bookstore required a finding that the proposed use would contribute to the general well-being of the neighborhood, was not detrimental to the health, safety or general welfare of residents and was in harmony with the purpose and intent of the general plan. In holding the ordinance unconstitutionally vague and overbroad, the Court stated that the ordinance conferred unlimited authority to deny any application for an adult bookstore. *Palm Avenue Books,* 171 Cal.Rptr. at 199–200. In light of these holdings, we hold that § 27–317, as it applies to adult bookstores, is unconstitutional.

Since we have determined that the special exception criteria in § 27–317, as it applies to adult bookstores, is unconstitutional, we must next determine whether we can sever that section from the rest of the ordinance.

In determining whether the valid portions of an ordinance are severable from the invalid portion, we must look to the intent of the Legislature. *O.C. Taxpayers for Equal Rights, Inc. v. Mayor of Ocean City,* 280 Md. 585, 600, 375 A.2d 541 (1977). In the instant case, § 27–106 of the County zoning ordinance contains the following severability provision:

"(a) Should any provision of the Zoning Ordinance be decided by the courts to be unconstitutional or invalid,

that decision shall not affect the validity of the Ordinance other than the part decided to be unconstitutional or invalid."

The presence of a severability clause in an ordinance reinforces the presumption that the Legislature would have intended to enact the valid portions of the ordinance, notwithstanding the invalid portion. *O.C. Taxpayers*, 280 Md. at 601, 375 A.2d 541. Because § 27–106 is such a strong indication of legislative intent, we hold that the zoning ordinance is valid and § 27–317 is severable from the rest of that ordinance.

 Our final determination is whether § 27–317 remains valid for uses other than adult bookstores. Where the same provision of the statute affects different classes of objects, the same provision may be valid as to some and unconstitutional as to others. *Murphy v. Wheatley*, 100 Md. 358, 365, 59 A. 704 (1905). Facially, the ordinance here affects all businesses which are equally required to obtain a special exception. Where, however, the business is involved in an activity which is constitutionally protected conduct, the ordinance must be narrowly drawn to protect those interests. *American Mini Theatres*, 427 U.S. at 72–73, 96 S.Ct. at 2453–2454. As indicated in *11126 Baltimore Boulevard*, 684 F.Supp. at 899, "[w]hile such standards may be acceptable in the zoning of facilities such as a funeral home ... they do not pass muster" when First Amendment freedoms are concerned. Thus, the same statute affects different businesses in a different manner. Accordingly, we hold that § 27–317 is unconstitutional only as it applies to adult bookstores.

## CONCLUSION

For the aforementioned reasons, we affirm the trial judge's decision upholding the Prince George's County Zoning Ordinance as constitutional. Since we hold that § 27–317 is unconstitutional, but only as it applies to adult

bookstores and is severable, we need not remand.[11]

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

11. If Landover elects to apply for a special exception, allowance of that special exception will be governed by the relevant sections of the ordinance exclusive of § 27–317.